(Decided March 2nd, 1866.)

GEORGE SMALL *vs.* ADOLPHUS C. SCHAEFER.

AGREEMENT: CONSIDERATION: PAROL PROMISE TO PAY THE PRE-EXISTING DEBT OF ANOTHER: STAT. 29, CHARLES II, SEC. 4.—G, a broker, received from the defendant certain moneys to invest in bonds, and being then indebted to the plaintiff gave the latter his check for the amount due him, and deposited with the cashier of his bank five State bonds, to make his checks good. Three of the bonds so deposited had been purchased upon the order and with the money of the defendant, but never delivered to him, yet marked in pencil with his initials. These bonds were transferable by delivery, and neither the bank nor the plaintiff were aware of the defendant's claim to a part of them. After the deposit the bank overpaid checks of G but did not pay the check given to the plaintiff. G failed a few days after depositing the bonds in bank. When the defendant called on him, G told him the bonds were pledged with the bank to secure its overpayment of his checks and the unpaid check to the plaintiff; upon which the plaintiff proposed, if G would give him an order for the five bonds he would make good the amount due on them to the bank, and also pay G's check to the plaintiff, to which G agreed. Upon the presentation to the bank of the orders given under this agreement for the delivery of these bonds, and upon payment of

*the sum due the bank,* the bonds deposited were delivered up. After the bonds had been obtained, G and the plaintiff called on the defendant to inquire why the check had not been paid, and the defendant admitted his promise to pay, but said he was too smart to pay that check, and had procured the bonds without paying more than the bank's advances. On a suit brought against the defendant by the plaintiff, HELD :

1st. That it was not necessary, to create an obligation on the part of the defendant to pay the plaintiff the amount of the check, that the consideration should proceed *directly* from the plaintiff or the promise be made directly to him. Such a promise to one for a third party, is to be deemed made to the third party, if adopted by him, although he was not cognizant of it when it was made.

2nd. That the prejudice of the plaintiff by the delivery of the bonds was a sufficient consideration to support the defendant's promise, whether the latter was benefited by the transaction or not.

3rd. That this case was clearly within the well-known exception to the operation of the *statute of frauds,* that " wherever the main purpose and object of the promisor is, not to answer for another but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another."

The rule that there must be an extinguishment of the first debt as a consideration of the new promise, applies only to that class of cases where the creditor's relinquishment of the first debt is the motive of the promise. It does not apply to cases where other inducements are held out such as the assignment of property, or relinquishment of liens, in consideration of which the promisor undertakes to pay the debt of another.

WITNESS, COMPETENCY OF : RELEASE.—The plaintiff, in order to render G a competent witness, during the trial executed a release to him, reserving the " right to proceed against any and all other parties who may in any manner be liable," HELD :

That such release rendered G competent if he was before incompetent, without prejudice to the right of action of the plaintiff.


APPEAL from the Superior Court of Baltimore City.

The facts of this case are stated in the opinion of the Court.

The cause was argued before BOWIE C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Andrew S. Ridgely & R. J. Brent* for the appellant.

Every contract, written or verbal, not under seal, requires

a consideration to support it and give it validity. *Smith's Law of Cont.*, 3 *Am. Ed.*, *pp.* 70 and 129. *Story on Cont.*, sec. 426, &c.

Not only must there be a consideration, but a valuable consideration—emanating from some injury or inconvenience to one party or some benefit to the other party. *Story on Cont.*, sec. 429, 3 *Am. Ed.* 2 *Black. Com.*, 297. *Smith on Cont.*, 169, 3 *Am. Ed.*

But the performance of an act which it was before legally incumbent on the party to perform, is in law a " worthless and insufficient consideration." For instance :—" If the master of a ship promise his crew an addition to their fixed wages in consideration of and as an incitement to their extraordinary exertions during a storm, this promise is *nudum pactum*—the voluntary performance of an act, which it was before legally incumbent on the party to perform, being in law a *worthless and insufficient consideration.*— *Chitty on Cont.*, 5 *Am. Ed.*, 1842, *p.* 51. *Newman vs. Waters*, 3 *Bos. & Pul.*, 615. *Calligan vs. Hallett*, 1 *Caines.*, (*N. Y. Rep.*) 104.

Again.—A debtor being bound by law to give up the title deeds of an estate to a purchaser pursuant to a decree of sale, enters into an agreement with the purchaser to deliver them to him on payment of a sum of money, the debtor is not only without any right of action for enforcing such an agreement, but if the money is paid, he is himself subject to an action for the recovery of it back. In all such cases the parties are bound to do the acts in question without compensation or reward. *See Addison on Cont.*, 2 *Am. Ed.*, 13 and 14, *and cases cited.* *See also Jones vs. Waite*, 5 *Bingham N. C.*, 191.

The Court erred in granting the plaintiff's prayer, and in rejecting the defendant's 1st, 3rd, 5th and 7th prayers.

1st. Because there was no privity of contract existing between the plaintiff and defendant.

2nd. Because of want of consideration for the alleged promise.

3rd. Because the alleged promise was to pay to the plaintiff a pre-existing debt due to him from another person, and was not in writing, but verbal, and no action can be sustained by the plaintiff on such verbal promise.

What is the object of this action? It is to recover the amount of a check drawn in favor of the appellee on the Franklin Bank of Baltimore, by one McGinn, a stock and bill broker, for the amount of the proceeds arising from the sale of a promissory note entrusted by the appellee to the said McGinn for sale, sold by the said McGinn, but the proceeds of which sale instead of being paid over to the said appellee, were by the said McGinn dishonestly appropriated to his own use.

While, for the purposes of the present argument, it is not admitted that there were two distinct considerations which admit of severance, nor insisted on the other hand that the consideration is entire, and must be regarded as wholly good or wholly bad ; yet this is a matter for the consideration of the Court.   See Story on Cont., secs. 480, 481, 482.

It is at the same time most emphatically urged and contended, that be the condition severable or not, be it wholly good or wholly bad, whatever else it may be capable of, it is not capable of sustaining an action in the name of the appellee. It did not move from him, but passed directly from McGinn. The promise was not made to him, it was made to McGinn—the appellee was in no wise privy thereto. To the signing and delivery of said orders he was a stranger. When he took the check he knew there was no money in bank, but McGinn did not pledge any particular bonds as security for its payment, he simply told the appellee that he " had some State bonds which he would deposit with the bank, or other securities, or something else, to make his check good." The check when presented was dishonored,

the bank persistently refused to pay it on the security of said bonds. The delivery of the bonds, therefore, to the appellant on McGinn's order, occasioned no loss, trouble or inconvenience to, or charge upon the appellee. He neither was present at, nor assented to the agreement made between the appellant and said McGinn, and he cannot recover in this action. *Story on Cont.*, sec. 450, &c., 3 *Ed. Powel on Cont.*, p. 344. *Owings vs. Owings*, 1 *H. & G.*, 487, 488.

Upon the question whether a person can sue upon a promise, even though it be professedly for his benefit, where he is an entire stranger to the consideration, that is, has taken nothing of trouble or charge upon himself, or occasioned any benefit to the promiser, but such trouble has been sustained or advantage conferred by a third person, the cases seem to have been contradictory, though it is a recognized rule of law that the consideration for a promise must move from the plaintiff. The contract is in such cases binding, there being sufficient consideration, and the difficulty is, who should be made the plaintiff—the party with whom the agreement was made, and from whom the consideration moved, or the party meant by him to be benefited, and for whose advantage the act stipulated for is to be performed? It is clear that if the promisee be a mere agent for the person to be benefited, the latter may sue upon the agreement, though not known at the time to be interested therein. But if no such agency exists, there seems to be great difficulty in permitting an entire stranger to the consideration to enforce the performance of the contract by action in his own name. *Chitty on Cont.*, 53, 54, *Am. Ed.*, 1842. *Addison on Cont.*, 940, 941.

From the case of *Price vs. Easton,* cited in illustration of the above examples, it may be seen that not only must there be a consideration moving from the plaintiff to the

defendant, but there must be shown a privity between them, the plaintiff must have known of the arrangement, and the promise must have been made to him. *Price vs. Easton,* 4 *Barn.* & *Adol.*, 433, (24 *Eng. C. L. Rep.*, 96.) *Addison on Cont.*, 940. Very slight circumstances are, however, sufficient to connect the consideration with the promise so as to enable the promisee to maintain an action thereon. If the act or service, for example, forming the consideration for the defendant's promise to the plaintiff, has been rendered to the defendant at the instance and request, and through the instrumentality or procurement of the plaintiff, it has been held that the consideration moves from the plaintiff so as to enable him to maintain an action upon the promise. *Addison on Cont.*, 491. *Eastwood vs. Kenyon,* 11 *Adol.* & *Ell.*, 452.

If there is a benefit to the defendant and a loss to the plaintiff consequential upon, and directly resulting from the defendant's promise in behalf of the plaintiff, there is a sufficient cause or consideration moving from the plaintiff to enable the latter to maintain an action to recover compensation. *Addison on Cont.*, 492. *Schemerhorn vs. Vanderheyden,* 1 *Johns.*, 139. *Blymire vs. Boistle,* 6 *Watts,* 182. *Owings vs. Owings,* 1 *H.* & *G.*, 484.

If there be a privity between the parties, either party, indifferently, may bring the action. Thus, where the plaintiffs were creditors, and the defendants were debtors of T, and by consent of all parties an arrangement was made that the defendants should pay to the plaintiffs the debts due from them to T, it was held that the agreement was for a sufficient consideration. *Story on Cont., sec.* 450. *Wilson vs. Coupland,* 5 *Barn.* & *Ald.*, 228. So a privity of contract will be implied when the promise or agreement is made in the presence of the third person, with his assent. *Lilly vs. Hays,* 5 *Adol.* & *Ell.*, 550. *Story on*

*Cont., secs.* 450, 454. And while it is contended as a general rule to be unquestionably true that no person can maintain an action on an agreement to which he is not a party, it is at the same time acknowledged that there are certain exceptions to the rule. If a contract be made with an agent or attorney, or one holding towards the plaintiff a position analagous to that of agent or attorney, the principal may sue in his own name. *Chitty on Cont.,* 54, *and note T; also p.* 615. If money is delivered by A to B for the purpose of being paid over to C, the latter may maintain an action against B for the money ; or, if goods are so delivered with the understanding that they are to be turned into money, and the proceeds applied in the same way, this would be an exception to the general rule. *Story on Cont., secs.* 451, 454. Or, if the promise is not special, but general in its character, the assent of the third party may make him constructively a party thereto. *Treat vs. Stanton,* 14 *Conn.,* 445. Or, if the promisee be not beneficially interested in the performance of the promise, and the party beneficially interested therein be the party to whom it is to be performed, the last may maintain the action—or, if he be the meritorious cause of the promise. 1 *Ch. Pl.,* 2 *and* 4.

These, it is apprehended, are all the material exceptions that can fairly be deduced from the adjudged cases ; and the only difficulty consists in not carefully considering and fully analyzing the cases which are within the rule, and those which are within the exceptions, and comparing the one class with the other. *See Lawrence vs. Fox,* 20 *N. Y.,* (6 *Smith,*) 268. *Hind vs. Holdship,* 2 *Watts,* 104. *Hall vs. Marston,* 17 *Mass.,* 579. *Carnegie vs. Morrison,* 2 *Met.,* 401. *See also Lilly vs. Hays,* 5 *Adol. &.Ell.,* 550. *Story on Const.,* 451. *Dutton vs. Poole,* 1 *Vent.,* 318. *Treat vs. Stanton,* 14 *Conn.,* 446. *Blymire vs. Boistle,* 6 *Watts,* 182. 2 *Am. Le. Ca.,* 165. *Owings vs. Owings,* 1

*H. & G.*, 485. *Mellen vs. Whipple*, 1 *Gray.*, 317. 2 *Am Le. Ca.*, 167.

For a full review of the authorities upon this much embarrassed question the Court is referred to the notes to *Vadaken vs. Soper.* *Depeau vs. Waddington*, 2 *vol. Hare and Wallace's Am. Le. Ca.*, 159, 160, 161, 163, 164, 165, 166 *and* 167. It is insisted upon that the present case is within the rule and not within the exceptions. The promise was made not to the appellee but to McGinn; the consideration, if there was any sufficient consideration in the case, moved from the latter, and he was beneficially interested in the performance of the promise, for by that performance he would have been relieved of all liability on the check given by him to the appellee.

Lastly, it is contended that the alleged promise was to pay to the plaintiff a pre-existing debt due to him from another person, and being verbal, and not in writing, no action can be maintained by the plaintiff on such verbal promise. *Stat. of Frauds, sec.* 4. *Burge on Suretyships*, 20.

"This statute," says Mr. Brown, (*Brown on Statute of Frauds, sec.* 188,) "applies to promises to pay the debt of another, and this is construed by the Courts, both of England and this country, to mean the debt of some person other than the immediate parties to the contract of guaranty." And as authority for this statement he refers to *Eastwood vs. Kenyon*, 11 *Adol. & Ellis*, 438. *Colt vs. Root*, 17 *Mass.*, 229. *Mersereau vs. Lewis*, 25 *Wend.*, 243. *Weld vs. Nichols*, 17 *Pick.*, 538. *Barker vs. Bucklin*, 2 *Denio*, 45, the case of *Hardesty vs. Jones*, decided by the Court of Appeals of this State, 10 *Gill & John.*, 404, and other cases.

This is undoubtedly sound law and a proper construction of the statute. Where the debtor sues on a promise made by the defendant to him to pay his debt to a third party, the statute of frauds does not apply, and the promise

need not be in writing, as was the case of *Eastwood vs. Kenyon*, 11 *Adol. & Ell.*, 438, because the promise, as between the said plaintiff and defendant, is an original undertaking, and not a promise to answer for the "debt, default or miscarriage of another." But where the creditor, the third party to whom the debt is due, sues, it is on an alleged promise on the part of the defendant to pay the debt of another person, that is to say, to answer for the debt due to the plaintiff from another, a third party, other than the defendant, and to this latter case the statute does apply, and the promise must be proved to be in writing. This has been expressly ruled in a recent case decided by the Supreme Court of Pennsylvania. *Shoemaker vs. King, Penn. State Rep.*, (4 *Wright*,) 107. "It is an attempt," in the language of the Court of Appeals of this State, "to establish by oral proof a promise to pay the debt of another contrary to the statute of frauds. It is an effort on the part of a creditor seeking to charge a third person with a debt already due to him from another, an effort to establish orally two subsisting liabilities to the same person for the same debt, which is clearly prohibited by the statute." *Jones vs. Hardesty*, 10 *G. & J.*, 417, 418. *Sloan vs. Wilson*, 4 *H. & J.*, 329. *Andre vs. Bodman*, 13 *Md. Rep.*, 254.

"Where the original debt is destroyed or discharged by the new parole agreement, the statute does not in general apply, otherwise it does, and the promise or agreement must be in writing. *Chitty on Cont.*, (*Ed.*, 1842,) *pp.* 513, 515, 615, 616. *Browning vs. Stallard*, 5 *Taunt.*, 450. *Caperton vs. Grey*, 4 *Yerger*, 563. *Andre vs. Bodman*, 13 *Md. Rep.*, 242. *Elder vs. Warfield*, 7 *H. & J.*, 396, 397.

*Supplemental Points.*—The release executed by Schaefer, the appellee, to McGinn, destroys his right of action against Small, the appellant, and hence there was error in refusing

the first and third prayers of the appellant and in granting the appellee's prayer, ignoring the effect of the release. The only privity that existed, or could exist, between the appellant and appellee, grew out of the check and its payment, and that privity has been destroyed, to the injury of appellant, by the release of McGinn, the maker of the check.

The agreement of the appellant must be either an original undertaking to pay the appellee the debt represented by the check, in which case, as the debt evidenced, by the check, has ceased to exist, by the effect of the release, the undertaking cannot be performed ; or a collateral undertaking, to pay a pre-existing debt, in which event, as the pre-existing debt has ceased to exist, the collateral undertaking must fall ; and in addition, all collateral undertakings, to pay the debts of another, are within the 4th Section of the Statute of Frauds.

The obligation of Small to pay McGinn's check cannot be greater than if he had specially endorsed it, or greater than if McGinn had drawn upon him and he had accepted it, in fact his obligations under the circumstances are much less.   If he had contracted as the acceptor of a draft, or the accommodation endorser, or the joint maker, of a note, the release of McGinn would clearly discharge him; and can he be held to a stricter accountability?  *Story on Bills of Exchange, sec.* 433.   *Booth vs. Campbell,* 15 *Md. Rep.,* 574.

*I. Nevitt Steele,* for the appellee.

The prayer of the appellee and the third, first and seventh prayers of the appellant present the following questions for the consideration of the Court.

1st.  Was there any consideration for the promise of the appellant ?

Small *vs.* Schaefer.

2nd. Was the appellee barred from a recovery by the want of privity of contract with the appellant ?

3rd. Was the appellant's promise void under the statute of frauds, because it was not in writing ?

1st. It is contended for the appellee that the promise of the appellant was made on a sufficient and valuable consideration. That consideration, as shown by the evidence, was an order, divided at the request of the appellant into two orders, for the delivery of five State bonds of $1,000 each, and the orders were given and received, and the bonds obtained by means of them. Of these bonds, two were not even claimed to be the property of the appellant or of Jenkins whose name he caused to be inserted in one of the orders. These two bonds, of themselves, and without aid from the three others, constituted a valuable consideration. Nor was their efficacy in this respect affected by the alleged title of the appellant to the other three bonds. He probably learned on the evening of April 24th that the five bonds were deposited in the Franklin Bank ; on the morning of the 25th he claimed three of them of the bank, and was informed that they could not be delivered without an order from McGinn, and he then went to Govanstown, and there with full knowledge of his own claim to the ownership of the three bonds, made the promise, on which the action is founded, in consideration of the orders for the delivery of the whole five. There was therefore no deception practiced on him in reference to the three bonds, and he obtained precisely what he had bargained for.

But he had not the legal title to the three bonds. They were purchased by McGinn in New York on his own account, and the legal title to them was in him. They were not by any means clearly identified, as the three bonds bought by McGinn in New York, in fulfillment of his contract with the appellant, and even if they had been, they were McGinn's until delivery had been made to the appel-

lant. Even if the appellant could have established his claim to these particular bonds as against McGinn, still as they were negotiable by delivery, they were McGinn's as to all the world who dealt with him innocently in reference to them. If he held them, merely as agent for the appellant, then the principle applies, that every agent who is entrusted with notes or other securities endorsed in blank, so that they pass by delivery, is authorized to use and transfer them as he pleases, in dealing with those who are ignorant of the agency.

Further, the bonds had been deposited in bank and advances made upon them ; they had been equitably pledged to the appellee for payment of the post dated checks received by him ; and the appellant's claim to them specifically, was at least doubtful. Under these circumstances the acquisition of an undoubted title to them, and the obtention of possession, constituted a valuable consideration. 1 *Pars. on Cont.*, 369. *Kent vs. Lyles*, 7 *G. & J.*, 73. *Longridge et al., vs. Dorvil et al.*, 5 *Barn. & Ald.*, 117.

2nd. It is contended for the appellee that his recovery in this case is not prevented by want of privity of contract between him and the appellant. Because the bonds having been deposited with the bank, as security for the payment of the check held by the appellee, he had a lien upon them, and therefore the consideration for the promise of the appellant in great part passed from him, the appellee, and he was not a stranger to it. Even if this be not so, he was at least so connected with the transactions out of which our action arises, that he cannot be regarded as a stranger to the consideration. If he was not a stranger to the consideration, then there was privity and our action is maintainable. 1 *Pars. on Cont.*, 389.

Even if the appellee is to be regarded as in no sense connected with the consideration, this action is properly main-

tainable, because when a promise upon valuable considera-
tion is made to one to pay money to another, that other
may sue and recover upon it. This proposition is estab-
lished by the clear weight of authority in this country and
in this State.

The existence of privity between two parties in reference
to a particular transaction, is a question of law, and the law
constantly implies privity to further the ends of right and
justice. If money is paid to one who in consideration
thereof agrees to pay it to a third person, it is everywhere
conceded, that an action by such third person for money
had and received will lie. Here the law implies or makes
the privity. If the same promise is made on a transfer or
delivery of stocks, goods or other property, why should
not privity be equally implied to support an action on such
promise? There is no rational ground for a distinction
between the two cases. *Clopper vs. Union Bank,* 7 *H. & J.,*
92–104. *Owings vs. Owings,* 1 *H. & G.,* 384. *Arnold vs.
Lyman,* 17 *Mass.,* 400. *Carnegie vs. Morrison,* 2 *Met.,*
381. *Hind vs. Holdship,* 2 *Watts,* 104. *Brewer vs. Dyer,*
7 *Cush.,* 337. *Schemerhorn vs. Vanderheyden,* 1 *John's.
Rep.,* 140. *Barker vs. Bucklin,* 2 *Denio,* 45. *Del. &
Hudson Canal vs. Westchester Bank,* 4 *Denio,* 97. *Law-
rence vs. Fox,* 20 *N. Y.,* (6 *Smith,*) 268.

3rd. The promise of the appellant was not made void
under the statute of frauds, by the fact that it was not in
writing.

Because it was an original and not a collateral promise.
1 *Parsons on Contracts,* 497–498. 2 *Id.,* 305–306. *Allen
vs. Thompson,* 10 *N. H. Rep.,* 32. *Hilton vs. Dinsmore,*
21 *Maine,* 410. *Nelson vs. Boynton,* 3 *Met.,* 396. *Elder
vs. Warfield,* 7 *H. & J.,* 391. *Brown on Statute of Frauds,*
sec. 166. *Andre vs. Bodman,* 13 *Md. Rep.,* 254.

And because it was not made to the person to whom the
party undertaken for was liable. *Eastwood vs. Kenyon,*

11 *Adol. & Ell.*, 438.    *Hargreave vs. Parsons*, 13 *M. & W.*, 561.

4th. The fifth prayer of the appellant was properly rejected by the Court below.

Because there was no evidence in the case upon which the jury could find that the promise of the appellant was founded exclusively on the consideration of the order for the delivery of the two bonds to Jenkins.   On the contrary the evidence is uncontradicted, that the promise was made in consideration of the order or orders for the delivery of the five bonds ; and also because the obtention of the possession of the three bonds claimed by the appellant, did, under the circumstances of the case, constitute a consideration.

Bowie, C. J., delivered the opinion of this Court.

McGinn, a broker, being indebted to the appellant for money advanced to be invested in bonds, and to the appellee for money had and received to his use, gave the appellee his check, post dated April 22nd, 1861, for $1,397.50, on the Franklin Bank of Baltimore, stating at the same time he had some State bonds or other securities which he would deposit with the bank to make his check good. . Subsequently, he deposited five State bonds of $1,000 each with the cashier of the bank.   After the deposit, the bank overpaid checks of McGinn to the amount of $890, but refused to pay his check to the appellee.

Three of the bonds deposited had been purchased upon the order of the appellant, with funds advanced by him, but never delivered to him, yet marked in pencil, with the initials of appellant.   These bonds were transferable by delivery, and from aught that appears, neither the bank, nor the appellee were aware of the appellant's claim to a part of them.   McGinn failed a few days after depositing

the bonds in bank. When the appellant called on him, McGinn told the appellant, the bonds were pledged with the bank to secure the overpayment and check to the appellee; upon which the appellant proposed, if McGinn would give him an order for the five bonds, he would make good the amount due on them to the bank, and also pay McGinn's check to the appellee, to which McGinn agreed. The appellant presented two orders, one in favor of himself for three bonds; another in favor of Robert Jenkins for two, which were signed and delivered to the appellant. Upon presentation of the orders and payment of the $890, the bonds deposited were delivered. After the bonds had been obtained, McGinn and the appellee called on the appellant, to inquire why the check had not been paid, and the appellant admitted his promise to pay, but said he was too smart to pay that check and had procured the bonds without paying more than the bank's advances.

The appellee sued the appellant. At the trial it was agreed, "all errors in pleading are waived, and *either party may offer in evidence and have the benefit of any special matter, in the same manner as if it had been specially pleaded.*"

The appellant excepted to the prayer granted by the Court, at the instance of the appellee, and the rejection of the 1st, 3rd, 5th and 7th prayers offered by himself. The verdict and judgment being against him, he prayed an appeal.

The questions raised upon these exceptions are :

1st. Was there a privity of contract sufficient to entitle the appellee to sue ?

2nd. Was there a consideration for the supposed contract of the appellant?

3rd. Was the contract within the statute of frauds ?

The appellant's 5th prayer raises the separate question

of want of consideration, unless the appellant's undertaking was founded on the delivery of the order to him in favor of Jenkins, which may be considered a branch of the 2nd point.

The prayer of the appellee, being founded on all the facts, assuming them to be proved to the satisfaction of the jury, it became the duty of the Court, to decide whether the law, under the circumstances, would oblige the appellant, to pay to the appellee the amouut of McGinn's check. It is not necessary to create such an obligation, that the consideration should proceed *directly* from the plaintiff or the promise be made *directly* to him. The result of the more modern decisions is clearly condensed by Professor *Parsons* in his *Law of Contracts*, title "*Consideration.*" After stating the ancient doctrine based upon English authorities, he says: "In this country, the right of the third party to bring an action on a promise made to another for his benefit, seems to be somewhat more positively asserted, and we think it would be safe to consider this the prevailing rule with us. * * * Such a promise is to be deemed made to the third party, if adopted by him, although he was not cognizant of it when made. 1 *Parsons on Contracts*, 466, 467, 468.

SHAW, C. J., in the case of *Carnegie vs. Morrison*, 2 *Metcalf*, 402, after reviewing the English and American decisions, lays it down as settled in Massachusetts, ever since reports of cases have been published, that "when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement." This position, he says, is sustained by citations from *Comyn's Digest* and *Rolle's Abridgement*.

BIGELOW, J., delivering the opinion in *Brewer vs. Dyer*, 7 *Curtis*, 340, refers to *Carnegie vs. Morrison* in these

terms : "In the latter case, all the authorities are fully reviewed in the opinion of the Court, and the rule of law clearly vindicated and established. It does not rest upon the ground of any actual or supposed relationship between the parties as some of the earlier cases would seem to indicate ; *Dutton vs. Poole,* 1 *Vent.,* 318. 2 *Walford on Parties,* 1144, nor upon the reason that the defendant, by entering into such an agreement, has impliedly made himself the agent of the plaintiff ; by COLERIDGE, J., in *Lilly vs. Hays,* 5 *Ad. & El.,* 551; but upon the broader and more satisfactory basis, that the law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation on which the action is founded. 7 *Cush. Rep.,* 340.

In *Owings vs. Owings,* 1 *H. & G.,* 484, this Court adopt the principle, "that where one person makes a promise to another for the benefit of a third person, the third person may maintain an action on such promise," but in that case there was no new consideration for the promise, by the defendant, to pay the commissions to the children, but a mere promise to pay a pre-existing debt, due to the mother, to the children, without showing any interest on their part in the subject matter of the promise, beyond the relation of parent and child.

The case of *Kent & Lyles,* 7 *G. & J.,* 76, shows that a verbal promise to pay a claim of another against the promisee, may be sustained by the substitution of a note by the promisee for his alleged acceptance to the promisor. It was held that "under all the circumstances of dispute and anticipated difficulty, in relation to the acceptance, the adjustment of them all, by giving the note for the amount claimed by the defendant, was sufficient consideration for the agreement to indemnify."

The appellant's second objection is, that there was no

consideration for the promise, unless the jury find that the appellant, in consideration of receiving the order for two bonds, in favor of Jenkins, promised McGinn he would pay the appellee the amount of McGinn's check to him.

This point embraces the appellant's third and fifth prayers, the former being a denial of any consideration, the latter, a qualified or special denial.

The absence of all consideration is based upon the argument, that as to three of the bonds, those were purchased with appellant's funds, and had an ear mark upon them which made them the property of the appellant, and being entitled to his own, their delivery to him constituted no consideration for his promise, and as to the two other bonds these being delivered to Jenkins, did not enure to the appellant's benefit, and were alike inoperative as a consideration.

If the evidence of the agreement between the appellant and McGinn, is assumed to be true, (which for the purpose of these prayers is inevitable,) the contract was one and indivisible; one consideration and one promise. The parties contracted for the delivery of *five* bonds, in consideration of which, the checks for which they were pledged were to be made good. Small thus sanctioned the act of McGinn. The subsequent division of the bonds between himself and Jenkins was entirely the act of the appellant. It was improper to grant an instruction upon a hypothesis foreign to the facts. Its tendency would have been to mislead. The entirety of the consideration made it immaterial what claims the appellant set up to a portion of the bonds. If he had claimed the whole, the adjustment of his claims upon McGinn, and avoidance of all further litigation to secure them, was a sufficient consideration to sustain his promise to pay the claim of the appellee; the latter being prejudiced, and the former benefited, in proportion to their respective claims upon the bonds.

If the delivery of the two bonds to Jenkins was for the exclusive benefit of the latter, that advantage was obtained to the prejudice of the appellee, in consequence of the appellant's promise, and whether he profited by the transaction or not, his obligation to perform that promise was the same in law. It results from these premises, that the prayers of the appellant denying the existence of a consideration for his promise wholly or in part, were properly rejected.

The third and last point arises on the appellant's seventh instruction, which affirms that if the jury find that the defendant, in consideration of the delivery of five bonds named in the evidence, *verbally* promised to McGinn to pay his pre-existing debt to the plaintiff, then the promise is void and no action can be sustained thereon.

This prayer invokes the protection of the 4th section of the Stat. 29, Chas. II.

The facts bring the case clearly within the well known exceptions, to the operation of that statute. "Wherever the main purpose and object of the promisor, is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise, to pay the debt of another." 3 *Pars. on Cont.*, pp. 24, 25. *Nelson vs. Boynton, 3 Met.*, 396. Thus in *Jones vs. Hardesty*, 10 *G. & J.*, 404, the main purpose of the firm being to procure the waiver of objections of a surety of a debtor, to an assignment of assets for the benefit of the firm, the verbal obligations of the firm to pay the debt due by the principal to Mr. Harwood, in consideration of that waiver, an assignment was held not within the statute. 3 *Met.*, 396. 7 *Cush.*, 136, 11 *G. & J.*, 418; vide also opinion of SHAW, C. J., *in Alger vs. Serville*, 1 *Gray*, for a very lucid exposition of the words "debt of another," referring with approbation to 11 *Ad. & Ell.*, 446. To the same effect is the case of *Andre vs.*

11    v. 24.

*Bodman,* 13 *Md. Rep.,* 254, where a number of cases from *Williams vs. Lefer,* 3 *Burr,* 1886, to *Elder & Warfield,* 7 *H. & J.,* 396, are cited to sustain the same principle. The observation following the enumeration of certain cases, viz : "The cases show that there must be an extinguishment of the first debt, as a consideration for the new promise," applies only to that class of cases where the creditor's relinquishment of the first debt is the motive of the promise. It does not follow of course, where other inducements are held out, such as the assignment of property or relinquishment of liens, in consideration of which the promisor undertakes to pay the debt of another. In *Jones vs. Hardesty,* the first debt was. not relinquished, but retained and held by another up to the time of injunction. "It is not an attempt to establish orally two subsisting liabilities for the same debt, to the same person, but a new and original obligation springing out of new considerations.

The point raised in the appellant's supplemental brief as to the effect of the release to McGinn, executed by the appellee during the trial, does not appear to have been raised below ; it escaped the attention of the counsel in the preparation of their original elaborate briefs. Inasmuch as the release was not offered in evidence, or incorporated in the bill of exceptions, it is by no means clear that this Court can entertain the inquiry. Without an inspection of the paper it would be impossible to pronounce any opinion as to its legal effect. Since the argument, however, the counsel have by consent furnished a copy of the release, which on inspection appears to have been so qualified in its terms as to operate only to discharge McGinn from liability to the appellee, reserving "the right to proceed against any and all other parties, who may in any manner be liable," etc., which, in the opinion of a majority of the Court, rendered McGinn competent, if he was before incompetent, without prejudice to the right of action of the appellee.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

