ROSENBERG ET AL. *v.* ROLLING INN, INC.

[No. 132, October Term, 1956.]

*Decided March 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Arnold Fleischmann,* with whom were *Edward Azrael, A. Frederick Taylor* and *Smalkin, Hessian, Martin & Taylor* on the brief, for the appellants.

Submitted on brief by *Johnson Bowie* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Suit below was by the mortgagees, the appellants, for the bal-

ance due on an unrecorded mortgage which had been assumed by the corporate appellee when it purchased the business and assets of the original mortgagors. The trial court found that the undertaking was to answer for the "debt, default, or miscarriage of another" and because there was no written evidence of the agreement held that the statute of frauds barred recovery.

Rosenberg and Kaminsky, the appellants, are coin machine operators. Some of their machines were in a supper club in Baltimore County conducted by a corporation called Villa Donna, Inc. From time to time they made unsecured loans to that corporation that finally aggregated $5,200. Mr. and Mrs. Eaton, stockholders in the corporation, owned the building in which the supper club operated. In July, 1949, the Eatons and Villa Donna, Inc. executed and delivered to Rosenberg and Kaminsky a mortgage for $5,200 payable one year from date, with interest at 5% per annum, covering the land, the building and the furniture, fixtures and paraphernalia of the supper club. The mortgage was never recorded. In November, 1949, by written contract, the Eatons and one Bowen, its other stockholder, and Villa Donna, Inc. sold the real and personal property covered by the mortgage—the supper club business—to three individuals "individually and to trade as Rolling Inn (a corporation to be formed under the laws of the State of Maryland) hereinafter called Vendees". The contract provided that the vendees assumed "the absolute obligation of the payment of * * * the obligation of several mortgage indebtednesses existing as a lien against said property and most specifically * * * an unrecorded mortgage to Harry Rosenberg and Moe Kaminsky". One of the purchasers had obtained Kaminsky's agreement that Rolling Inn, Inc. could continue to amortize the mortgage in the same manner as it had been agreed that Villa Donna, Inc. could, that is, by paying some or all of one-half of the weekly income from the coin machines in the supper club on the mortgage indebtedness.

A week after the execution of the contract, Rolling Inn, Inc. was incorporated. Its directors met in the office of its counsel and ratified the assumption by the corporation of the mortgage. There were written minutes of the meeting containing the resolution that the corporation assumed the mortgage, signed by

the secretary, but they had been lost before the time of the trial. The first president of the corporation testified it had assumed the Kaminsky mortgage debt and, as a result, had made payments on the mortgage for a considerable period of time. The corporation's president at the time of the filing of the suit and at the time of the trial, testified that when he bought his stock in the corporation, before he became president, it was with the knowledge that the corporation owed Rosenberg and Kaminsky the balance then due under the mortgage and that this obligation showed on the books as a liability of Rolling Inn, Inc. Indeed the written agreement for the transfer of the stock listed the debt as due by the corporation. As president of the corporation, he was aware that the corporation made payments regularly on the mortgage indebtedness and the records of the corporation showed such payments—a total of some $2,117.00. The treasurer of Rolling Inn, Inc. said that it stopped making payments on June 2, 1951, and repudiated its obligation under the mortgage because no note, mortgage or other writing signed by the corporation could be found, and that this was the sole reason for the repudiation of the debt. The opinion of the trial judge indicates that there was in evidence a letter from the corporation's counsel to his client, dated July 19, 1950, advising it as to each of its debts, including that to Rosenberg and Kaminsky, under the mortgage.

We find it entirely clear from the record that Rolling Inn, Inc. ratified the contract made by the three individuals who became its first stockholders with the Eatons and Villa Donna, Inc., by taking over the real and personal property transferred pursuant to the contract and using them in the conduct of its business, and that in so doing it accepted not only the benefits but assumed the obligations of that contract, including the promise to the Eatons and Villa Donna, Inc. to pay the mortgage debt due Rosenberg and Kaminsky. " 'When, however, the contract is made in the name or in behalf of the projected corporation, or is treated as a proposal to such corporation, then in the absence of other controlling circumstances, acceptance of benefits under the contract justifies the inference that the corporation has ac-

cepted or adopted it.'" *Md. Apartment House Co. v. Glenn,* 108 Md. 377, 389.

In our view, the only question that must be decided is whether the statute of frauds prevents Rosenberg and Kaminsky from enforcing the promise of Rolling Inn, Inc. to pay the mortgage indebtedness. Since our opinion is that the statute does not apply in this case, we find no need to, and we do not, decide (a) whether, if it did apply, the uncontroverted evidence that there had existed minutes of the corporation explicitly showing the assumption of all of the liabilities of the Eatons and Villa Donna, Inc., signed by the secretary of the corporation, was a sufficient writing to gratify the statute even though not produced at the trial, or (b) whether the admissions of the president and treasurer of Rolling Inn, Inc. on the stand, that there had been an assumption of the liability dispenses with the need for the production of a writing. See *Dove v. White,* 211 Md. 228, 234, *et seq.; Laporte Corp. v. Cement Corp.,* 164 Md. 642; *Trossbach v. Trossbach,* 185 Md. 47.

The statute of frauds is not applicable here because the promise of Rolling Inn, Inc. was not primarily and directly to Rosenberg and Kaminsky but was to the Eatons and Villa Donna, Inc. Where the promise to pay a debt or obligation is not to the creditor, but to the original debtor, the promise does not fall within the statute. Thus, where Eastwood was indebted to Blackburn on a promissory note and Kenyon promised Eastwood to pay Blackburn the sum due, Kenyon's promise was enforceable even though not in writing. *Eastwood v. Kenyon,* 11 Ad. & E. 438, 446, 113 Eng. Rep. 482, 485. 2 *Corbin on Contracts,* Sec. 357, states that rule and says:

> "Not only can the promisee maintain suit upon the oral promise, but the creditor can also, suing as a creditor beneficiary of the contract.
>
> "In many of these cases the defendant has promised not only the debtor but the creditor also. This does not change the application of the statute. The promise to the creditor merely reinforces the promisor's duty that would exist anyway by reason of the

contract with the debtor; and the promisor is himself the principal and ultimate obligor. * * *

"The courts very frequently say that the defendant is promising to pay his own debt to his creditor's nominee, not the debt of another. Frequently this is true, even in the most technical sense of the word 'debt'; for the defendant has received property or service or other quid pro quo from the promisee. It is also often said that the primary purpose of the promisor is to acquire the beneficial consideration, thus bringing the case within the 'leading object' rule. These reasons are quite sound; but it is not necessary to depend on them to take the promise out of the statute. The promise is made to a debtor, not to a creditor; and this is enough. * * * his promise being to the debtor, thus creating a duty to relieve that debtor of his obligation, he cannot be a surety. As between himself and the debtor, he has become the primary and ultimate obligor; and the debtor has become the surety, if either one can properly be so called.

"When a buyer of property assumes a debt with which it is charged by mortgage or otherwise (or any other debt of the promisee) his promise is not a guaranty; it is made to a debtor instead of a creditor and it is made for a full agreed equivalent received by the promisor."

Williston agrees with Corbin's views. 2 *Williston on Contracts,* Rev. Ed., Secs. 471, 475, 478. In Sec. 478, he says: "As has been seen the application of the Statute has been confined to promises made to the creditor; but under a rule generally prevailing in this country, the contract of a third person with a debtor to pay his debt may be enforced by the creditor and the creditor is commonly held to acquire a new and direct right against the new promisor. * * * Thus where the grantee of mortgaged property assumes the mortgage, his obligation to the creditor is not within the Statute." See, too, *Restatement, Contracts,* Sec. 191; 15 A.

L. R. 1183; 149 A. L. R. 816; 8 *Fletcher, Cyclopedia Corporations,* Perm. Ed., Sec. 4016.

The cases amply support the text writers and the digests. See, for example, *Pembroke's Appeal* (Me.), 104 A. 630; *Moscon v. North American Benefit Assn.* (Del.), 2 A. 2d 898; *Danby v. Osteopathic Hospital Ass'n of Delaware* (Del.), 104 A. 2d 903. This Court has taken the same position. See *Harwood v. Jones,* 10 Gill & J. 404, 418. There the Court said, in analysing the promise there in question: "It is a new and original promise to a debtor, founded (as must be assumed in this aspect of the case) upon a full consideration to discharge a debt due by such debtor, and is no more a case within the statute, than it would have been if the promise had been, instead of paying a subsisting debt, to pay to the debtor a sum of money of the same amount." In *Small v. Schaefer,* 24 Md. 143, 161, *Eastwood v. Kenyon,* cited above, is relied on in reaching a decision on the point. *Small v. Schaefer* noted that where there is an assignment of property or a relinquishment of liens, in consideration of which the promisor undertakes to pay the debt of another, the statute does not come into play, even though the first debt is not extinguished.

As Corbin pointed out in the language quoted above, the courts very frequently say, in a situation like that before us, that the defendant is actually paying his own debt or that the primary purpose is to acquire a substantial beneficial consideration, and that for these reasons the statute of frauds is inapplicable. See 2 *Corbin on Contracts,* Chap. 16. This Court, in a number of cases has followed this general principle. *Small v. Schaefer, supra; Webster v. Le Compte,* 74 Md. 249; *De Waters v. Mergler,* 183 Md. 574; *Crown Realty Corp. v. Weinstein,* 177 Md. 260, 263. Cf. *Strohecker v. Schumacher, etc.,* 185 Md. 144, 151, *et seq.* Even if the promise had been to the creditor rather than to the debtor, as it was in this case, the circumstances here would bring the case within the principle of these cases.

It is clear to us that the judgment must be reversed. Since the only defense is the statute of frauds, judgment will be en-

tered for the plaintiff below for the sum sued for, with interest from June 2, 1951, when payments ceased.

> *Judgment reversed and judgment entered for the appellants against the appellee for $3,083.00, with interest at 5% per annum from June 2, 1951, the appellee to pay the costs below and in this court.*