## ROLLING INN, INC. *v.* IULA

[No. 134, October Term, 1956.]

*Decided April 5, 1957.*

The cause was argued before BRUNE, C. J., COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Johnson Bowie,* for appellant.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment in the amount of $2,500.00, with interest at the rate of five per centum, and costs, entered by the trial judge, sitting without a jury, in favor of the appellee against the appellant.

The facts in this paragraph are not disputed. The plaintiff, appellee, Frank J. Iula, on December 19, 1949, personally borrowed from the Catonsville National Bank $2,500.00 on a note, and the check of the bank for that amount was duly endorsed and deposited to the account of the appellant, defendant, Rolling Inn, Inc., (the corporation). This was a personal loan to the plaintiff. The defendant is a corporation of the State of Maryland, incorporated on December 1, 1949. The plaintiff became president at its formation. There were three principals in the formation of the corporation, Messrs. Iula, Lucian W. Moree and Wesley Bowen. These three, on November 25, 1949, bought a parcel of real estate located near Ingleside Avenue in Baltimore County. The supper club business conducted thereon was bought from a Maryland corporation known as Villa Donna, Inc. The agreement of purchase was signed November 25, 1949, by these three persons individually and as "Rolling Inn, Inc., a corporation to be formed". The corporation was formed on December 1, 1949, the three vendees being the stockholders and directors. Mr. Moree originally put $1,500.00 in the corporation. About one month later he became dissatisfied and wanted to get out.

The appellee testified that this was agreeable to him and to Mr. Bowen. However, they lacked the necessary cash to pay Mr. Moree the $1,500.00. The corporation had very little cash at that time and had borrowed to the full extent of its assets and had no further credit. However, Mr. Iula had individual credit and the loan of $2,500.00 was made to him personally. Mr. Iula and Mr. Moree testified that $1,500.00 of this $2,500.00 was paid to Mr. Moree to reimburse him for the amount he originally put in the corporation. No

stock had been issued to him. He had also agreed to advance $1,000.00 additional to the corporation which he never did. He was relieved of this obligation by Messrs. Iula and Bowen. Mr. Iula testified that this $2,500.00 note was to be retired as soon as possible and the corporation paid the interest on the note each month as it was renewed.

On December 28, 1949, the corporation, by Frank J. Iula, President, executed a mortgage for the term of one year to Frank J. Iula personally for $15,000.00. He acknowledged the mortgage as president and made oath as to the consideration personally. This mortgage was drawn by attorney Eugene M. Carozza who was named as defendant's attorney therein. Mr. Carozza testified that he represented both the corporation and Mr. Iula personally. This mortgage contained, among other provisions, the following: "* * * being the aggregate agreed upon amount due by said mortgagor unto said mortgagee for advances made from time to time heretofore by said mortgagee to said mortgagor." It was recorded on June 27, 1950. On January 15, 1950, the corporation, by Frank J. Iula, President, executed a chattel mortgage to Frank J. Iula, personally, in the amount of $3,500.00, which mortgage was recorded on July 5, 1950. It was also acknowledged for the corporation by Mr. Iula as President and oath as to the consideration was made by him personally. This mortgage included the above quoted clause which was in the former mortgage. When asked the dates and exact amounts of his advances to the corporation, Mr. Iula testified that just before the corporation purchased the real estate he advanced $4,500.00. On November 25, 1949, when the real estate was bought he advanced $10,500.00. He also gave the corporation a note of $4,000.00 for stock which he paid two months later. About sixty days later he advanced an aggregate of $3,500.00 to the corporation for the purpose of paying bills and making improvements. He further said that neither of the mortgages included the $2,500.00 note which he had given personally to the bank.

Mr. Iula got out of the corporation about July 19, 1950, and sold his stock to Mr. Wesley Bowen. On January 31, 1951, Mr. Frank Armetta, Mr. Carroll F. Kelly, who became

president of the corporation, and Mr. James S. D'Agostino executed an agreement by which Mr. Armetta and Mr. Kelly agreed to sell Mr. D'Agostino fifty shares of the common stock of Rolling Inn, which represented fifty percent of the outstanding common stock of that corporation, for the sum of $6,000.00. This agreement contained the stipulation that the outstanding indebtedness and claims against the corporation "* * * as of January 6, 1951, do not exceed the sum of Fifty-six Thousand Dollars ($56,000.00) plus accrued interest, if any, on the following Schedule No. 1, of mortgages, judgments, etc., to wit: * * * 8.—Note Frank Iula—held by Catonsville National Bank $2,500.00."

The appellant claims that the appellee has not proved that he loaned or advanced $2,500.00 to the corporation and has not met the burden of proof required of an officer and director of the corporation to prove said loan. It relies on the case of *Cumberland Coal & Iron Co. v. Parish,* 42 Md. 598, where Judge Alvey stated that an inherent obligation rests upon the board of directors of a corporation that they will in no manner use their position to advance their own individual interests, as distinguished from that of the corporation, or acquire interests that may conflict with the fair and proper discharge of their duty and that, if one of the directors is allowed to place himself in a position of having his conduct and acts made the subject of supervision and scrutiny, he cannot act in regard to these matters both for himself and the corporation. The burden of proof is upon such a director to establish the perfect fairness, adequacy and equity of the transaction by proof entirely independent of the instruments under which he may claim. This statement was repeated in the case of *Indurated Concrete Corp. v. Abbott,* 195 Md. 496, 74 A. 2d 17. Of course, this principle is imbedded in the law of this State. However, in the instant case it is admitted by the appellant that Mr. Iula personally borrowed this money and deposited it to the account of the corporation. Appellant relies on the above quoted statement in the $15,000.00 mortgage that that sum was the aggregate agreed upon amount due by the corporation to Mr. Iula for advances made, and also on the same statement in the chattel mortgage for $3,500.00. There is

no evidence that the sum of $3,500.00 was advanced between the dates of the $15,000.00 mortgage and the $3,500.00 mortgage. If the $15,000.00 mortgage was all that was due Mr. Iula when it was executed, it seems highly improbable that the $3,500.00 mortgage would later be executed.

It is, of course, true as stated in *Carlin v. Fischer,* 212 Md. 526, 129 A. 2d 827, that ordinarily a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for various parts thereof. We do not have that situation here.

Furthermore, as pointed out by the trial judge, the fact that both mortgages contained the above quoted recital would indicate that this was a terminology used by the attorney who drew the mortgages, and not a serious indication that this recital intended to convey the fact that the amounts of the mortgages were the total indebtedness of the defendant to the plaintiff at the time of their execution. This is particularly true because the mortgages indicate that at the time of the execution of the chattel mortgage on January 15, 1950, the $15,000.00 mortgage, dated December 28, 1949, was still unpaid. It appears that the bookkeeping of the corporation was casual at least. However, it is evident from Mr. Carroll Kelly's testimony in *Harry Rosenberg, et al. v. Rolling Inn, Inc.,* 212 Md. 552, 129 A. 2d 924, that when Mr. Kelly came into the corporation on January 6, 1951, the books of the corporation showing its liabilities were available to him. The aforesaid agreement executed on January 31, 1951, by Mr. Armetta and Mr. Kelly definitely lists the $2,500.00 note of Mr. Iula.

The trial judge, who saw and heard the witnesses, stated that he was impressed by the testimony of the plaintiff himself and by the testimony offered in his behalf. Of course, under Maryland Rules, formerly Rules of Practice and Procedure, Part Three, III—Trials, Rule 9 (c), in effect when this case was tried, now Rule 886, effective January 1, 1957, when an appeal is taken from a trial by the court, the judgment of the trial court will not be set aside on the evidence unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility

of the witnesses. The only persons objecting to the payment are not creditors, but stockholders who were fully apprised of the situation. We were informed at the argument in this Court that the corporation is entirely solvent. We are of opinion that the trial judge was justified in rendering the judgment appealed from.

*Judgment affirmed, with costs.*