The MAY DEPARTMENT STORES COMPANY

v.

FIRST HARTFORD CORPORATION, First Hartford Realty Corporation and Forbes & Wallace, Inc.

Civ. No. H-76-348.

United States District Court, D. Connecticut.

Aug. 8, 1977.

---

Robert K. Ciulla, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., Seymour D. Lewis, Asa D. Sokolow, Marvin R. Lange, New York City, for plaintiff.

Henry C. Ide, Hartford, Conn., Samuel Kirschenbaum, Dreyer & Traub, Brian Mi-

chael Seltzer, Thomas C. Lambert, New York City, for defendants.

## RULING ON PLAINTIFF'S MOTION TO STRIKE THE FOURTH AND SIXTH AFFIRMATIVE DEFENSES

BLUMENFELD, District Judge.

This is a diversity action for specific performance of a contract and for related relief. Plaintiff, The May Department Stores Company ("May") alleges two causes of action: first, that defendants breached an alleged contract between May and defendant First Hartford Realty Corporation to convey a leasehold interest in department store premises then occupied by defendant Forbes & Wallace, Inc., a partially owned subsidiary of defendant First Hartford Corporation; second, that the defendants fraudulently induced plaintiff into erroneously believing that First Hartford Realty Corporation would convey a right of occupancy in the Forbes & Wallace store premises to May, and would not seek to negotiate with other parties in an attempt to secure a more favorable agreement. It is undisputed that Forbes & Wallace has conveyed its interest in the department store to a third entity not a party to this action.

The defendants have interposed numerous defenses, two of which are the subject of the plaintiff's present motion to strike pursuant to Fed.R.Civ.P. 12(f).[1] In their Fourth Affirmative Defense, the defendants allege that May was subject to an order of the Federal Trade Commission ("F.T.C.") which deprived it of the "right power or authority" to enter into the alleged contract.[2] It is asserted that this order bars plaintiff's recovery on the contract. In their Sixth Affirmative Defense, the defendants allege that the plaintiff falsely represented that it was under no factual or legal disability with respect to

the execution or performance of an agreement to acquire the assets of Forbes & Wallace. The defendants assert that this non-disclosure of the existence of the consent decree amounted to a material misrepresentation which entitled the defendants to rescind the contract. Although these defenses are somewhat related, they present significantly different theories of defense. As such, the legal sufficiency of each must be separately considered.

### I. Fourth Affirmative Defense

It is admitted that on September 9, 1966, the F.T.C. issued a complaint and a consent order involving the plaintiff May. The complaint charged that May's acquisition of two department stores was in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. While not admitting that these acquisitions violated Section 7, May consented to an order requiring for 10 years that it "cease and desist from acquiring, directly or indirectly, without first notifying the Federal Trade Commission and obtaining its consent, any department store . . . or any assets constituting a substantial part of all of the assets, or any concern engaged in the department store . . . business in the United States."[3]

The defendants' Fourth Affirmative Defense rests on the contention that the contract in question is unenforceable because it violated this F.T.C. order. While ordinarily it is desirable for the law to protect competent parties in their right to make and enforce bargains between themselves, this freedom to contract is restricted by the transcendent rule that denies enforceability to illegal bargains. *Northwest Airlines, Inc. v. Alaska Airlines, Inc.,* 351 F.2d 253, 256 (9th Cir. 1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1068, 15 L.Ed.2d 853

---

1. Rule 12(f) of the Federal Rules of Civil Procedure provides:

   "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the

court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

2. Defendants' Answer, Forty-Fifth Paragraph.

3. Exhibit A.

(1966). However, this defense of illegality should be permitted "only in clear cases" and "[t]he principle must be cautiously applied to guard against confusion and injustice." *Steele v. Drummond*, 275 U.S. 199, 205, 48 S.Ct. 53, 54, 72 L.Ed. 238 (1927).

■ There are several sources from which an agreement may be rendered illegal and hence unenforceable: by legislation, in the form of a statutory or constitutional provision; by the common law, as embodied in judicial precedent; or by the often vague dictates of public policy. 6A *Corbin on Contracts*, § 1374 (1962). On the theory that a court should similarly not come to the aid of a plaintiff by enforcing a contract which does not comply with an outstanding administrative order, the defendants seek to extend the doctrine and assert the defense of illegality here. This case, however, does not require an analysis of the general effect of administrative orders on otherwise valid contracts, for the concern here is with a unique type of agency order, the consent decree. Moreover, while the parties have argued at length about whether or not the alleged contract violates the order, the legal sufficiency of the defense turns in the first instance on the more fundamental question of the precise nature of an F.T.C. consent order.

■ As the Supreme Court has recognized, an F.T.C. consent decree or order, at least for enforcement purposes, must be construed basically as a contract. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

"Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation."

*United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) (footnote omitted).

A consent order, therefore, being the product of compromise and negotiation between two parties has only the attributes of a contract.[4] Unlike legislation, it is not the expression of broad and conscious policymaking. *Cf. Rosten v. Federal Trade Commission*, 263 F.2d 620, 622 (2d Cir. 1959); nor does it have the imprimatur of a neutral decision maker as does a judicial decree, *National Candy Co. v. Federal Trade Commission*, 104 F.2d 999, 1004 (7th Cir.),

---

4. The court does not mean to suggest that consent orders never have any of the attributes of legislative or judicial acts. *See United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932). However, for enforcement purposes, as opposed for example to efforts at modification, consent decrees are most properly viewed as contractual in nature. *See generally,* M. Handler, *Antitrust Review*, 72 Colum.L.Rev. 1, 19–34 (1972). Moreover, the consent order at issue here is not governed by the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)–(h). *See generally,* Note, *Construction and Modification of Antitrust Consent Decrees: New Approaches After the Antitrust Procedures and Penalties Act of 1974,* 77 Colum.L.Rev. 296 (1977).

*cert. denied,* 308 U.S. 610, 60 S.Ct. 174, 84 L.Ed. 510 (1939). Indeed, the party against whom a consent order is directed admits to no violation of law, and the order may not be used as evidence to prove any antitrust violation against him.[5] For all these reasons, a consent order does not embody the forceful legal mandate necessary to justify permitting a third party to rely upon it in order to relieve himself from an obligation that he has voluntarily assumed. Moreover, to permit the collateral use of the consent decree here runs contrary to its contractual nature because nothing in the decree indicates that the parties intended third party enforcement.[6]

In *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), the Supreme Court was confronted with a problem not unlike that presented here. While fully cognizant of the principle underlying the defense of illegality, that is, that a court should not sanction illegal acts, the Court nevertheless held that a purchaser of goods could not interpose as an affirmative defense to a contract that the bargain was an indivisible part of an agreement that violated the Sherman Antitrust Act. The Court limited the availability of the illegality defense to those circumstances "where the judgment of the Court would itself be enforcing the precise conduct made unlawful . . . ." *Id.* at 520, 79 S.Ct. at 432. *Cf. Bruce's Juices, Inc. v. American Can Co.,*

330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947).

■ Enforcement of the alleged contract involved in the present case would not require the court to sanction such illegality.[7] The consent order requires only that May obtain the F.T.C.'s permission before acquiring the assets of a department store. As Professor Williston has noted, "The fact that a party bargains to do an act which will be illegal unless governmental permission is obtained does not make such bargain illegal . . . [rather] if he does not obtain such permission he is responsible in damages for failure to perform." 6 *Williston on Contracts,* § 1767, at 5019 n.3 (1938). Whatever disability the F.T.C. order may have placed on May's ability to fulfill its contractual obligations to the defendants, it did not render the contract illegal. And, if May could not perform the contract, the defendants would have had an action for the damages resulting from the breach. Thus, even if the consent order was deemed to be legislative or judicial in character, the illegality defense would not be available here.

■ What has been said thus far is not intended to detract from the seriousness of a violation of an F.T.C. consent order. Indeed, the Congress has provided severe penalties for such violations, 15 U.S.C. § 21(*l*).[8]

---

**5.** The Clayton Act, Section 5(a), 15 U.S.C. § 16(a), provides for the admissibility, as *prima facie* evidence, of antitrust judgments obtained by the United States in subsequent private actions against the same defendants. However, the statute explicitly excludes from its operation "consent judgments or decrees entered before any testimony has been taken . . . ."

**6.** In no sense can it be said that the defendants were intended to be the direct beneficiaries of the consent order. Surely, the F.T.C.'s purpose was to protect the interests of consumers and to further competition. Yet, no specific competitor was the express object of the consent order. *Cf. United States v. American Society of Composers, Authors and Publishers,* 341 F.2d 1003, 1008 (2d Cir. 1965).

**7.** The defendants have also asserted as an affirmative defense that the contract violated the antitrust laws. Answer, Fifth Affirmative Defense. The sufficiency of that defense is not

before the court at this time. And, while it must be tested by the standards of *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), the court does not express any opinion as to its merits.

**8.** 15 U.S.C. § 21(*l*) provides:

"Any person who violates any order issued by the commission or board under subsection (b) of this section after such order has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the United States. Each separate violation of any such order shall be a separate offense, except that in the case of a violation through continuing failure or neglect to obey a final order of the commission or board each day of continuance of such

However, nothing in the legislative history evinces a Congressional intent to affix the additional sanction of rendering void and unenforceable private contracts which violate a consent order. *Cf. ETS-Hokin & Galvin, Inc. v. Maas Transport, Inc.,* 380 F.2d 258, 260–61 (8th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 481, 19 L.Ed.2d 471 (1967). In view of this absence of Congressional intent, it is quite inappropriate to add judicially to the remedies provided for by statute. *Cf. Kelly v. Kosuga, supra,* 358 U.S. at 519, 79 S.Ct. 429; *Bruce's Juices, Inc. v. American Can Co., supra,* 330 U.S. at 750–57, 67 S.Ct. 1015.[9]

There is yet another cogent reason for not permitting the defense of illegality. It has been held that a third party lacks standing to move in a government antitrust action for enforcement of a consent decree. *United States v. American Society of Composers, Authors and Publishers,* 341 F.2d 1003 (2d Cir. 1965); *accord, United States v. Western Electric Co.,* 1968 Trade Cas. ¶ 72,415 at 85, 279 (D.N.J.1968), *aff'd sub nom. Clark Walter & Sons, Inc. v. United States,* 392 U.S. 659, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968). This rule is premised upon the desirability of leaving the choice and power to enforce or modify the decree in the hands of the government. To do so "forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same time the continuing government supervision affords those parties affected by the decree sufficient protection of their rights." *Id.* at 1008.

These same policy considerations are fully applicable in the present context. The F.T.C. must have wide discretion in enforcing its orders. *Cf. Holloway v. Bristol-Myers Corporation,* 158 U.S.App.D.C. 207, 485 F.2d 986, 997 (1973); *see also Fedders Corp. v. Federal Trade Commission,* 529 F.2d 1398 (2d Cir. 1976). In every instance, it must decide, for example, whether its enforcement goals would be best served by seeking penalties for violation of the order or whether penalties might be inappropriate in view of changes in competitive conditions. The F.T.C.'s discretionary power would be severely diminished if private litigants were able to compel the enforcement of its orders, and that would be the effect of permitting third parties to raise violations of the orders as a defense to an otherwise valid contract.

In summary, the contractual nature of an F.T.C. consent order, the absence of any congressional intent to provide a sanction beyond those expressly found in 15 U.S.C. § 21(*l*), and the need for wide enforcement discretion on behalf of the F.T.C., mandate the conclusion that the defendants cannot assert a violation of the F.T.C. consent order as a defense to the alleged contract. The Fourth Affirmative Defense is, therefore, insufficient as a matter of law.

## II. *Sixth Affirmative Defense*

In their Sixth Affirmative Defense, the defendants seek recission on the ground of fraud. The thrust of the defense is that

---

failure or neglect shall be deemed a separate offense."

The defendants have argued that it is 15 U.S.C. § 45(*l*) that is applicable. However, the F.T.C.'s complaint alleges a violation of the Clayton Act, not the Federal Trade Commission Act. Thus, it is 15 U.S.C. § 21(*l*) that establishes the relevant penalties. *United States v. Papercraft Corporation,* 540 F.2d 131 (3d Cir. 1976).

**9.** The principle that courts should not judicially add to statutory remedies by means of refusing to enforce private contracts is especially appropriate in diversity cases. As the Supreme Court said in *Kelly v. Kosuga*:

"Obviously, state law governs in general the rights and duties of sellers and purchasers of goods, and, while the effect of illegality under a federal statute [or a consent decree of a federal agency] is a matter of federal law, *Sola Electric Co. v. Jefferson Electric Co.,* 317 U.S. 173, 176–177, [63 S.Ct. 172, 173–174, 87 L.Ed. 165], even in diversity actions in the federal courts after *Erie R. Co. v. Tompkins,* 304 U.S. 64, [58 S.Ct. 817, 82 L.Ed. 1188] still the federal courts should not be quick to create a policy of nonenforcement of contracts beyond that which is clearly the requirement of the Sherman Act [or 15 U.S.C. § 21(*l*)]."
358 U.S. 516, 519, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 (1959).

May fraudulently induced them to enter into the contract by falsely representing that it was under no disability with respect to the agreement in question. Unlike the Fourth Affirmative Defense, this defense does not depend upon third party enforcement of the consent decree. Rather, the contention is that the failure to disclose the *existence* of the consent order was a material misrepresentation regardless of whether the contract was ultimately found to violate it.

■ A motion to strike can be granted only if the legal insufficiency of the defense is "clearly apparent." Wright and Miller, *Federal Practice and Procedure*, Civil § 1381, at 802 (1969); *Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.*, 418 F.Supp. 798, 801–02 (D.R.I. 1976). The motion should not be granted "if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and statements that are not disputed." Wright and Miller, *supra* at 801 (footnote omitted).

■ It is premature to assess the legal or factual merits of the Sixth Affirmative Defense. There are numerous questions of fact concerning the applicability of the consent decree which must be resolved. Moreover, while the claim that the consent decree somehow created undue risks which would have clouded the deal is highly dubious,[10] the materiality of any misrepresentation nevertheless presents a mixed question of law and fact. *Cf. TSC Industries v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Indeed in this diversity case involving parties from New York, Maine, Delaware, and Massachusetts, and where relevant events occurred in a variety of places including Connecticut, the parties have not yet addressed the obvious choice of law questions that are prerequisite to any decision on the merits of this defense.[11]

For these reasons, it is inappropriate to pass on the validity of the Sixth Affirmative Defense at this early stage of this litigation; decision must await either a motion for summary judgment if appropriate, or the trial on the merits.

### III.  *Conclusion*

The Motion to Strike the Fourth Affirmative Defense is granted because its insufficiency as a matter of law is "clearly apparent." The Motion to Strike the Sixth Affirmative Defense is denied because issues of fact and law prevent the resolution of its validity on the pleadings.

It is SO ORDERED.

---

**10.** While I do not pass on the merits of the Sixth Affirmative Defense, it should be noted that there is no support for the defendants' contention that the F.T.C. could sanction them for entering into a contract which violated the consent decree agreed to by May. Consent orders based on a Clayton Act violation can be applied only against those who are parties to the order or those who have some identity with such a party, such as a successor in interest. Whether the same is true of violations of consent orders based on violations of the Federal Trade Commission Act need not be decided. *See* note 8 *supra*. *See* 15 U.S.C. § 45(m).

**11.** Unlike the Fourth Affirmative Defense, *see* note 9 *supra*, state law applies to the Sixth Affirmative Defense.