Neal VAN SCHOUWEN, Plaintiff,

v.

The CONNAUGHT CORPORATION, Defendant.

No. 91 C 1926.

United States District Court, N.D. Illinois, E.D.

Oct. 10, 1991.

Michael B. Brohman, Hilda Constance Contreras, Kamensky & Rubinstein, Lincolnwood, Ill., for plaintiff.

Lawrence M. Liebman, Jeffrey Stewart Firestone, Jeffrey Lawrence Epstein, Ruth P. Walz, James S. Koehler, Firestone, Gearhart & Liebman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

### I. *Introduction*

#### A. Background

Plaintiff, Neal Van Schouwen, has moved this court to dismiss under Rule 12(b)(6) the counterclaim brought by the defendant, The Connaught Corporation ("Connaught"). He has also moved under Rule 12(f) to strike many of the numerous affirmative defenses that Connaught has pleaded in its answer.

Van Schouwen is a former shareholder, officer and director of Connaught. In his five-count complaint, Van Schouwen invoked this court's diversity jurisdiction and sued Connaught over its alleged breach of a contract titled "Agreement to Sell Shares of Stock" (the "Stock Agreement") and also over its alleged breach of certain oral agreements. The Stock Agreement was a contract under which Van Schouwen was to sell his entire interest in Connaught (12.5 shares) to the company, thereby entirely disassociating himself from Connaught.

Count I of Van Schouwen's complaint alleges that Connaught breached a provision of the Stock Agreement requiring Connaught to pay Van Schouwen $150,000.00 for his 12.5 shares of Connaught. The complaint alleges that Connaught has so far paid only $30,000 towards the $150,000 purchase price and has missed the first of five scheduled annual installment payments of $24,000. Count II alleges that Connaught breached another provision of the Stock Agreement under which Connaught was obligated to pay Van Schouwen $17,300 for commissions owed to Van Schouwen by Governor's Capital, a corporation described in the complaint as "affiliated with Connaught." In Count III, Van Schouwen alleges that Connaught breached a subsequent oral agreement to apply the $17,300 mentioned in Count II to Van Schouwen's 1989 federal and state withholding and FICA taxes. Count IV alleges that Connaught breached an oral settlement agreement regarding the disputed $17,300 that the parties allegedly reached after Connaught failed to apply the $17,300 towards Van Schouwen's taxes. Finally, in Count V, Van Schouwen alleges that Connaught breached an obligation to indemnify Van Schouwen for liability he incurred in a civil suit brought against Van Schouwen

and others in a Wisconsin state court. Van Schouwen alleges that the obligation to indemnify was a part of the Stock Agreement.

In its answer, Connaught denied liability under each of the five counts and also raised a host of affirmative defenses. Connaught also brought a counterclaim, simply styled "Counterclaim," seeking rescission of the Stock Agreement. In the alternative, the counterclaim seeks to reform the written contract. The counterclaim's two demands require a showing of different claims and should have been drafted as two separate counterclaims. Accordingly, this court will evaluate the merits of Van Schouwen's 12(b)(6) motion with respect to the request for rescission separately from its merits with respect to the request for reformation.

### B. Connaught's Factual Allegations

To support its counterclaim for rescission, or in the alternative for reformation, Connaught alleges certain facts which this court must take as true for the purposes of the motion to dismiss. *See Gregory v. Nunn,* 895 F.2d 413 (7th Cir.1990). Connaught alleges that prior to executing the Stock Agreement, "Connaught represented to David Wabick, president of Connaught, that Connaught had a book value of approximately $1,200,000." (Counterclaim Par. 5). Connaught alleges further that Van Schouwen's 12.5 shares represented one-eighth of the outstanding shares of Connaught at the time of the execution of the Stock Agreement and that the parties arrived at the $150,000 purchase price based upon a belief that $150,000 was one-eighth of the corporation's book value. In addition, Connaught alleges that sometime after the execution of the Stock Agreement Connaught discovered that its books and records had been kept inaccurately and that therefore its book value at the time of the Stock Agreement was improperly inflated. It had been among Van Schouwen's duty as chief financial officer to keep Connaught's records and books.

Connaught does not allege intentional misrepresentation on Van Schouwen's part.

Instead, Connaught grounds its request for rescission or reformation based on mutual mistake. In its brief in opposition to plaintiff's motion to dismiss, Connaught states:

> Here, Connaught does not allege that Van Schouwen, the bookkeeper of Connaught at the relevant time, intentionally misrepresented the value of the corporation to anyone. It is coincidence that the person in charge of the books and records was the very same person who desired to sell his stock to the corporation. The result that Connaught seeks to obtain would be the same if any other shareholder sought to redeem his or her stock. If the value of the corporation was based upon incorrect figures, and both parties relied upon those incorrect figures, then there exists a mutual mistake.

Def./Counterclaimant Br. at 2.

### II. *Motion to Dismiss*

### A. Standard of Review

This court now must analyze whether the facts alleged by Connaught state a claim for relief (rescission or reformation). A motion to dismiss may only be granted if "it appears beyond doubt that the [counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Only if the allegations of the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant a motion to dismiss. *See generally* Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure:* Civil 2d § 1357 (West Publishing, 2d ed. 1990). Accordingly, all facts set forth in this opinion are taken from the well-pleaded allegations of the complaint. *See Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990).

### B. Counterclaim For Rescission

■ This court concludes that Connaught has not alleged a set of facts that would entitle it to the relief of rescission based on mutual mistake. The elements of a claim for rescission under Illinois law

**1244**

(which the parties agree governs) were provided in *Diedrich v. Northern Illinois Pub. Co.*, 39 Ill.App.3d 851, 857, 350 N.E.2d 857, 861–62 (2d Dist.1976):

> Before [a] contract can be rescinded [the party seeking rescission] must prove that the parties were both mistaken as to a material matter; that this matter is of such grave consequence that enforcement of the contract would be unconscionable; that the mistake [of the person seeking rescission] occurred despite the exercise of reasonable care; and that the other party can be placed in *status quo.*

Connaught has failed to plead facts sufficient to support the conclusion that the parties were mistaken as to a material matter, let alone a matter "of such grave consequence that enforcement of the contract would be unconscionable." At most, Connaught can show that a mutual mistake led to its signing a contract calling for it to pay a bit more than one-eighth of the "true" book value of Connaught's stock. That does not rise to the level of a mistake as to a material matter. *See id.*, 39 Ill.App.3d at 857–58, 350 N.E.2d 857 ("[A] contract fairly entered into for an adequate consideration cannot be avoided or disregarded by one of the parties to it because he discovers that the contract is less profitable to him than he anticipated when he entered into it").

The Stock Agreement between the parties is a relatively complex contract involving more than merely the redemption of 12.5 shares in exchange for cash. It also includes non-competition provisions, indemnification provisions and a provision under which Van Schouwen is also to transfer his stock in another company, Governor's Capital, Inc. In light of the relative complexity of the contract, the alleged mistake in calculating the purchase price is not sufficiently "material" to warrant the rescission of all terms of the contract. The alleged mistake did not go to the purpose of the contract but merely to one particular term.

In addition, Connaught has pleaded no facts to support a holding that it would be unconscionable to enforce the Stock Agreement, an element required by Illinois law. *See id.* Even if Connaught is correct that it paid more than one-eighth of its book value for Van Schouwen's 12.5 shares, the mere pleading of an overpayment is not enough to support a finding of unconscionability. Connaught will not be able to prove any set of facts showing that the Stock Agreement was "improvident, totally one-sided or oppressive" or that Connaught lacked a meaningful choice in the terms it could bargain for. *See In re Marriage of Carlson*, 101 Ill.App.3d 924, 930, 428 N.E.2d 1005, 57 Ill.Dec. 325 (1st Dist.1981).

**C. Counterclaim for Reformation**

This court now turns to whether Van Schouwen has stated a claim for relief of reformation under Illinois law. Reformation is a remedy by which a party has a contract rewritten so that it will conform to the agreement *actually* reached between the parties. *See Briarcliffe Lakeside Townhouse Owners Association v. Wheaton*, 170 Ill.App.3d 244, 120 Ill.Dec. 465, 524 N.E.2d 230 (2d Dist.1988). Reformation is an available remedy if it is based on a claim of mutual mistake, as Connaught argues in the instant case. *See Aetna Screw Products Co. v. Borg*, 116 Ill.App.3d 206, 71 Ill.Dec. 893, 897, 451 N.E.2d 1260, 1264 (1st Dist.1983).

Connaught argues that the mutual mistake originated with the parties' inaccurate understanding of Connaught's book value due to faulty corporate record-keeping. According to a liberal reading of Connaught's allegations, the parties agreed that Van Schouwen would be paid one-eighth of the book value of the company in exchange for his 12.5 shares of stock (one-eighth of the outstanding stock). The written contract's recitation of a payment of $150,000 was allegedly merely the parties' estimate of one-eighth of Connaught's book value. Connaught argues that the parties' "true" agreement was that Connaught would pay one-eighth of the book value and not that it would pay the figure of $150,000. The $150,000 figure therefore is a false representation of the parties' true agreement, Connaught alleges.

Those allegations do state a claim for reformation. They support a claim for a request to reform the written contract to be consistent with the parties' alleged true agreement. Van Schouwen argues that because Connaught is not seeking the insertion of an allegedly omitted provision, Connaught has failed to state a claim for reformation. (Pl. Br. at 5). Connaught's counterclaim states, however, that it is seeking a clarifying declaration that Van Schouwen is owed an amount equal to one-eighth of the book value of Connaught as of the date of the execution of the Stock Agreement. (Counterclaim prayer for relief par. B).

### III. *Motion to Strike*

■ Van Schouwen has moved to strike a number of the affirmative defenses raised by Connaught on the grounds that they do not constitute valid defenses. A motion to strike under Rule 12(f) is the appropriate remedy for the elimination of impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense. *See* Charles Wright & Arthur Miller, 5A *Federal Practice and Procedure:* Civil 2d § 1380. Judge Shadur has outlined a three-part test for examining an affirmative defense subject to a motion to strike:

(1) Initially the Court [must] determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise.

(2) If a matter may remain as an affirmative defense the Court [must] determine if it is adequately pleaded under the requirements of Rules 8 and 9. Any defense inadequately pleaded will be dismissed *without* prejudice to enable defendants to correct that technical deficiency.

(3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b)(6). If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill.1982).

■ Motions to strike are generally disfavored because they are often interposed to create a delay. *See United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir.1975). Indeed, motions to strike can be nothing other than distractions. If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record—such as on a motion for summary judgment. Accordingly, courts are typically reluctant to decide disputed or substantial issues of law on a motion to strike. *See id.* at 630.

On the other hand, when the insufficiency of a defense is clearly apparent, a motion to strike can help the litigants clear away irrelevant or redundant clutter. This court will review Van Schouwen's motion to strike in light of the foregoing considerations, striking only those defenses whose insufficiency is clearly apparent.

### A. Defense of Mistake Regarding Connaught's Book Value

■ As an affirmative defense to each of the five counts, Connaught has alleged that there existed a mistake of fact regarding the book value of Van Schouwen's 12.5 shares. Connaught claims that the alleged mutual mistake constitutes a defense to each of the five counts.

This court has explained earlier in this opinion why it is ruling that Connaught has failed to allege facts sufficient to support its counterclaim for rescission. For the same reasons, the defense of mutual mistake is insufficient as a defense to counts II through V. Even if the parties "truly" agreed to a purchase price of one-eighth the book value (rather than $150,000 as the written contract states), that fact would allow Connaught no more than the right to have the contract reformed. Accordingly, the defense of mutual mistake is sufficient as a defense to count I, the only count

about which the defense of mutual mistake would be pertinent. Counts II through IV do not deal with Connaught's alleged obligation to pay $150,000; they deal with Connaught's alleged breach of other provisions of the Stock Agreement and of other oral contracts.

As a result, the First Affirmative Defense to Count II, the First Affirmative Defense to Count III, the Third Affirmative Defense to Count IV and the First Affirmative Defense to Count V will be stricken.

### B. Second Affirmative Defense to Count I

As a second affirmative defense to Count I, Connaught has alleged that because the Stock Agreement lacks an acceleration clause, Van Schouwen is not entitled to the full $120,000 it claims. At most, Connaught's affirmative defense contends, Van Schouwen would be entitled only to the single installment payment which is overdue. Connaught refers to a section of the Stock Agreement which declares that the $150,000 is to be paid on installments. The contract calls for $30,000 to be paid "simultaneously with the execution" of the contract. It then calls for the remaining $120,000 to be paid in five consecutive annual installments beginning on October 19, 1990.

The Stock Agreement then provides:

Said principal balance shall be evidenced by a Promissory Note executed by Connaught, providing for the payment of the aforesaid annual installments of principal. Any installment of principal not paid when due shall bear interest after maturity at the rate of Nine (9%) per cent per annum, until paid. Connaught shall have the right to prepay all or any portion of the principal balance due under said Note at any time, without penalty or premium.

Van Schouwen's complaint did not include a copy of the promissory note referred to in the passage of the Stock Agreement just quoted.

Connaught's affirmative defense argues that the provision for payment of 9% interest on unpaid installments is Van Schouwen's only remedy, in addition to the installment itself, for failure of Connaught to make a timely installment payment. Connaught notes that the Stock Agreement does not include an acceleration clause which could have entitled Van Schouwen to demand accelerated payment of the $120,000.

■ Van Schouwen, however, attached to his reply memorandum in support of his 12(f) motion a copy of what he claimed to be the promissory note referred to in the Stock Agreement. That document *did* include an acceleration clause. For purposes of this motion, however, that promissory note must be ignored as it was not properly put before this court. For reasons unknown to this court, the promissory note the parties apparently agreed to was not attached to Van Schouwen's complaint.[1] Because it was not made part of the pleadings, the putative promissory note can not be taken into consideration for this 12(f) motion which, like a 12(b)(6) motion, can not be decided based on matter outside the pleadings. *See Bobbitt,* 532 F.Supp. at 737; *see also Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir.1989).

■ Van Schouwen first argues in his motion to strike that Connaught's second affirmative defense to count I is not technically an affirmative defense because it does not allege any new matter which would exculpate it from liability and damages to Van Schouwen. As Judge Shadur noted, "affirmative defense" is not an easy term to define. *See id.* An affirmative defense generally admits the matters alleged in a complaint but brings up some other reason why the plaintiff has no right to recovery. It thus introduces arguments not raised by a simple denial.

■ Rule 8(c) lists seventeen specific defenses but concludes that a party must

---

1. Had the promissory note properly been before the court, the sufficiency of Connaught's Second Affirmative Defense to Count I would have been evaluated in an entirely different light. Van Schouwen could attach the promissory note to an amended complaint.

also plead "any other matter constituting an avoidance or affirmative defense." The significance of the requirement that affirmative defenses be pleaded is that failure to plead an affirmative defense in one's answer can be treated by the court as a waiver of the right to present evidence on trial of that defense. *See id.* Accordingly, "the cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials." *Id.* at 736.

This court therefore is not moved by Van Schouwen's argument that inasmuch as the defense reiterates matter suggested by denials in the answer it is not technically an "affirmative defense." Connaught's defense is close enough to an "affirmative defense" that this court will not pursue Van Schouwen's pedantic argument any longer. This court considers Van Schouwen's argument (that affirmative defenses which repeat the implications of the defendant's denials should be struck) to be pedantic because striking such defenses does no good to anyone. Van Schouwen scores no advantage because it must still face the denials which, it says, make the affirmative defense redundant.

As a second argument for striking the second affirmative defense to count I, Van Schouwen claims that for breaches of installment contracts, the non-breaching party is entitled to the full value of the unpaid balance (here, $120,000). This contention is simply wrong. Although some jurisdictions will allow recovery in one lump sum of the present value of future scheduled installment payments, *see, e.g., American Founders Life Insurance Co. v. Wehling,* 561 S.W.2d 911 (Tex.Civ.App. 1978), Illinois is not one of them.

Connaught provided absolutely no authority for its position that Van Schouwen is not yet entitled to recover for later installment payments. Nonetheless, it is correct (apparently by luck) that absent an acceleration clause Van Schouwen is entitled only to the unpaid installments and not

to the full $120,000. As the Illinois Supreme Court has held, "[i]nstallment contracts ... are breached one installment at a time." *Blackhawk Hotel Associates v. Kaufman,* 85 Ill.2d 59, 68, 51 Ill.Dec. 658, 421 N.E.2d 166 (1981). The *Blackhawk* Court cited *Quick v. American Steel and Pump Corp.,* 397 F.2d 561, 564 (2d Cir. 1968), which mentioned the "usual rule that contracts to pay money in instalments are breached one instalment at a time" [sic]. The *Blackhawk* Court also cited the Restatement (Second) of Contracts § 268, comment c (Tent. Draft No. 8, 1973). That comment remarked that dissatisfaction with the rule that installment contracts are breached one installment at a time has led to the widespread practice of including acceleration clauses.

As mentioned above, the promissory note may actually include an acceleration clause. Van Schouwen's failure to include the promissory note in the pleadings required this court not to take regard of that note for purposes of this 12(f) motion. Because Van Schouwen's second argument regarding the second affirmative defense to count I rests upon an incorrect statement of the law and because no acceleration clause was properly before the court, the second affirmative defense to count I will not be stricken.

### C. Res Judicata Defense to Counts II and III

In Counts II of his Complaint, Van Schouwen alleges that Connaught breached an indemnification provision in the Stock Agreement to pay Van Schouwen $17,300 owed him by Governor's Capital, Inc. Count III alleges that Connaught breached a subsequent agreement to apply the $17,300 to Van Schouwen's federal and state withholding and FICA taxes. As a defense to each of these counts, Connaught alleges that Connaught and Van Schouwen were parties to an action entitled *First Savings & Loan Association v. Gal–Con Partners, Ltd.,* Case No. 90–CV–000209 in the Circuit Court of Milwaukee County, Wisconsin, and that the *Gal–Con* litigation bars

counts II and III under the doctrine of *res judicata.*

▄▄ Apart from the fact that the same indemnity provision is relevant both to the *Gal–Con* litigation and to the dispute regarding Governor's Capital's $17,300 debt to Van Schouwen, Connaught offers no connection whatsoever between this litigation and *Gal–Con.* In determining whether to give preclusive effect to the *Gal–Con* case, this court must look to the *res judicata* rules of Wisconsin, the state in which the *Gal–Con* litigation took place. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985).

▄▄ Under Wisconsin law, the prior and subsequent cases must both have arisen out of a single "transaction" in order for the prior case to preclude the latter. *De Pratt v. West Bend Mut. Ins. Co.,* 113 Wis.2d 306, 334 N.W.2d 883 (1983). Connaught has not argued that the dispute underlying the *Gal–Con* litigation involves a similar set of facts to those necessary to show liability on Governor's Capital's debts. None of the rationales behind the doctrine of *res judicata* would be furthered by requiring Van Schouwen to bring every single claim for indemnification at one time.

Accordingly, the affirmative defense of *res judicata* to counts II and III will be stricken.

**D. Count III: Defense of Statute of Frauds**

▄▄ In its third affirmative defense to Count III, Connaught argues that the Statute of Frauds prevents Van Schouwen from suing Connaught on Connaught's alleged breach of an oral promise to apply the $17,300 Governor's Capital owes Van Schouwen towards Van Schouwen's 1989 taxes. The Illinois Statute of Frauds provides in pertinent part:

No action shall be brought ... whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person ... unless the promissory agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith.

Ill.Rev.Stat. ch. 59, par. 1.

Van Schouwen argues that the Statute of Frauds does not apply for two reasons. First, he argues that because the promise to apply the money due Van Schouwen to Van Schouwen's taxes was made before his 1989 taxes came due, the promise is not governed by the Statute of Frauds. *See Publishers Advertising Associates, Inc. v. Wessel Co.,* 747 F.2d 1076 (7th Cir.1984) (interpreting Illinois Statute of Frauds) (oral promise to pay another's debt before debt came into existence falls outside Statute of Frauds). Second, he argues that because Connaught has a "personal, immediate and pecuniary interest" in Van Schouwen's tax liability, the promise need not comply with the Statute of Frauds. *See Ricci v. Reed,* 169 Ill.App.3d 1062, 1066, 523 N.E.2d 1218, 120 Ill.Dec. 307 (1st Dist. 1988) ("original" promises made when the promisor has a personal interest in the underlying debt transaction are not "special" promises and hence are not governed by the Statute of Frauds).

This court concludes that the defense of Statute of Frauds is inapplicable for reasons other than those raised by Van Schouwen. Connaught's alleged promise to apply the $17,300 owed by Governor's Capital to Van Schouwen's tax liability was not governed by the statute of frauds because an oral promise made to the debtor to discharge his debt is not within the statute of frauds. As one treatise-writer has stated:

There is universal agreement among our courts that the promise to answer for the debt of 'another' should be interpreted as a promise to the creditor of the 'other' rather than to the debtor, himself. The purpose of the suretyship provision was to preclude false claims by creditors who, having not been paid their debts, might be inclined to allege that a promise to pay the debt had been made by another.

Thus, even though the statutory language could be construed to bring within its ambit promises to debtors as well as creditors, it has not been so construed. John E. Murray, Jr., *Murray on Contracts* § 69 (3d ed. 1990). *See also* C.J.S. *Statute of Frauds* § 187 ("If the promise to assume the obligation of the debtor is made to a person other than one presently entitled to enforce the liability so assumed by the promisor, such promise is not one to answer for the debt of another within the meaning of the statute of frauds").

Illinois follows the "universal" rule that an oral promise made to a debtor rather than to a creditor to discharge his debt is not within the statute of frauds. *Oscar H. Wilke, Inc. v. Vinci*, 96 Ill.App.2d 189, 237 N.E.2d 768 (1st Dist.1968); *see also* Illinois Law and Practice, *Statute of Frauds* § 23. *Accord Rosenberg v. Rolling Inn, Inc.*, 212 Md. 552, 129 A.2d 924 (1957); *Danby v. Osteopathic Hospital Association*, 34 Del. Ch. 427, 104 A.2d 903 (1954). Because count III alleges Connaught's breach of a promise to the *debtor* to answer for his tax liability to the government, the statute of frauds defense is not pertinent. Accordingly, the statute of frauds defense to count III will be stricken.

### E. Defense of Failure of Consideration to Count III

In addition to denying that it reached an agreement with Van Schouwen regarding applying the $17,300 to Van Schouwen's tax liability, Connaught argues that in any event Van Schouwen offered it no consideration for paying part of Van Schouwen's tax liability. Van Schouwen argues that this affirmative defense is insufficient as a matter of law because Connaught asserts on the one hand that no agreement was reached (by denying allegations in the complaint) and on the other hand asserts in its affirmative defense that Van Schouwen provided no consideration. Van Schouwen argues that if the allegations of its complaint are true, then the affirmative defense must fail while if the allegations of its complaint are found not to be true, the affirmative defense of lack of consideration is moot. Moreover, Van

Schouwen points out that forbearance to sue and compromise of a dispute are valid consideration for a contract, *see Keller v. State Farm Insurance Co.*, 180 Ill.App.3d 539, 129 Ill.Dec. 510, 536 N.E.2d 194 (5th Dist.1989), *app dismd*, 127 Ill.2d 617, 133 Ill.Dec. 668, 541 N.E.2d 1106 (1989).

Despite Van Schouwen's arguments, this court will not strike the defense of failure of consideration. Keeping that defense in the pleadings would be at worst slightly redundant and will not complicate this litigation. The factual allegations and the legal conclusions that one can draw from them are not yet fully enough developed to answer the question of whether the defense should be stricken.

### F. Defense of Failure of Consideration to Count IV

In Count IV, Van Schouwen alleges that after failing to pay him the $17,300 that Governor's Capital owes him and then after failing to apply that sum to his taxes, Connaught entered into a settlement agreement with Van Schouwen whereby Connaught was *inter alia* to pay $21,000 plus interest. For reasons stated in part E, immediately above, this court will not strike the defense of failure of consideration to count IV.

### G. Defense of Adequate Remedy at Law to Count IV

In count IV of his complaint, Van Schouwen alleges that as part of its settlement with Connaught regarding the unpaid Governor's Capital debt, Connaught was to assign to Van Schouwen three "A" limited partnership units in the Carmel Plaza Limited Partnership as security. In the prayer for relief in count IV, Van Schouwen has requested this court to direct Connaught to deliver three "A" limited partnership units as well as to execute documentation relating to the partnership units.

Connaught has raised as an affirmative defense the argument that Van Schouwen has an adequate remedy at law and therefore fails to state a claim upon which equitable relief can be granted. Van Schou-

wen, in his motion to strike, argues that he is merely seeking enforcement of the oral contract which, as mentioned, allegedly included a provision requiring the partnership units to be offered as security. Because the allegations of the answer must be taken as true for the purpose of this 12(f) motion, this affirmative defense will not be stricken. Connaught denies even the existence of a settlement contract, let alone any terms involving posting partnership units as bond.

### H. Second Affirmative Defense to Count V

In count V, Van Schouwen alleges that Connaught owes him approximately $600,000 in order to indemnify him for liability arising from the *Gal–Con* litigation. The indemnity provision of the Stock Agreement stated:

> Connaught and MDN do hereby agree to indemnify and save Van Schouwen harmless from and against any and all claims, obligations, liabilities, lawsuits, judgments, liens, or losses relating to, arising from, or in connection with any and all liabilities, undertakings, obligations, or debts of Connaught, MDN and/or any and all affiliate companies or entities or either, whether past, present, or future, in general, and, in particular, with regard to arising from any personal guarantees which Van Schouwen may have heretofore executed, whether solely or jointly with others, relating to any transactions in which Connaught and/or MDN and/or any of their affiliates are or were a party or may have been involved.

Van Schouwen was subsequently named as one of the party defendants in the *Gal–Con* lawsuit in Circuit Court of Milwaukee County, Wisconsin. Van Schouwen faced liability due to a personal guaranty he had executed relating to Connaught. The parties agree that the claims made against Van Schouwen in the *Gal–Con* litigation are within the scope of the indemnification clause of the Stock Agreement.

By a Stipulation filed in April, 1990 in the Circuit Court of Milwaukee County, Wisconsin, the parties involved agreed to settle the *Gal–Con* litigation. Paragraph 8 of the Stipulation included Connaught's acknowledgment of its obligation to indemnify Van Schouwen against judgment entered in the *Gal–Con* litigation. Paragraph 8 states that:

> The Connaught Corporation stipulates and agrees that it will indemnify and hold Neil Van Schouwen harmless from and against the judgment entered in this action pursuant to the October 18, 1989 Agreement to Sell Shares of Stock between Neil Van Schouwen, Connaught and MDN Holding Company, and nothing herein shall affect the rights of any party pursuant to the Agreement to Sell Shares of Stock. Connaught and Van Schouwen stipulate and agree that the Court in this case shall retain jurisdiction to enforce the indemnification provisions of the Agreement to sell shares of stock.

The parties agree further that in July of 1990, an order for a deficiency judgment was entered in the *Gal–Con* litigation pursuant to which the defendants, including Van Schouwen, were held to be jointly and severally liable for the sum of $598,997.60 plus interest. Van Schouwen alleges that by a letter dated January 29, 1991, the plaintiff in the *Gal–Con* litigation made a demand against him for payment of the total deficiency judgment. Count V amounts to Van Schouwen seeking indemnification from Connaught.

While Connaught's admissions in its answer establish that Van Schouwen is entitled to indemnification for the *Gal–Con* liability Van Schouwen has incurred, Connaught has also raised two affirmative defenses to count V. The first, that the Stock Agreement should be entirely rescinded, will be struck as discussed in part B, above. The second affirmative defense to count V argues first that Van Schouwen has suffered no damages for which Connaught can be deemed liable. Next it suggests that this court lacks jurisdiction because the *Gal–Con* litigation arose in the Wisconsin state court and because the parties agreed that the Wisconsin court would "retain jurisdiction to enforce the indemni-

fication provision of the [Stock] Agreement."

■ The second affirmative defense is insufficient. Van Schouwen has alleged legal harm in his complaint. He alleged that he has received a demand for approximately $600,000 from the *Gal–Con* plaintiff and that he has incurred expenses deserving indemnification in defending the *Gal–Con* litigation. Connaught is apparently concerned that Van Schouwen has not alleged that it has actually paid anything yet to the *Gal–Con* plaintiff. As mentioned, however, Count V requests *inter alia* indemnification for the reasonable attorneys' fees and costs incurred in the *Gal–Con* litigation. Those expenses presumably have already been paid out. In addition, even if he has not yet properly requested it, Van Schouwen's allegations clearly make a statement for sufficient harm warranting the issuance of a declaratory judgment. *See* 28 U.S.C. § 2201. Van Schouwen could comply with 28 U.S.C. § 2201 and make a request for a declaratory judgment regarding an entitlement for reimbursement of the approximately $600,-000 *Gal–Con* liability in an amended complaint.

■ Finally, Connaught's suggestion that this court lacks jurisdiction is incorrect. Even though the Wisconsin court may still have jurisdiction over the dispute, concurrent jurisdiction is an everyday reality in our federal system that Connaught should be aware of. This court, sitting in diversity, has the jurisdiction and authority to hear Van Schouwen's claim for indemnity based upon a judgment entered against him in a Wisconsin state court.

### Conclusion

Plaintiff Van Schouwen's 12(b)(6) motion to dismiss Defendant Connaught's counter-claim will be granted inasmuch as the counter-claim seeks a rescission. It is denied inasmuch as the counter-claim seeks reformation. Consequently, this court orders stricken paragraph A of the prayer for relief of Defendant Connaught's counter-claim.

Plaintiff Van Schouwen's 12(f) motion to strike various affirmative defenses is granted in part and denied in part. To the extent it is granted, the following portions of Defendant Connaught's Answer are ordered stricken: First Affirmative Defense to Count II, Third Affirmative Defense to Count II, First Affirmative Defense to Count III, Third Affirmative Defense to Count III, Fifth Affirmative Defense to Count III, Third Affirmative Defense to Count IV, First Affirmative Defense to Count V and the Second Affirmative Defense to Count V.