**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Plaintiff,

v.

**COMDISCO, INC., Defendant.**

No. 91 C 6777.

United States District Court,
N.D. Illinois, E.D.

Sept. 15, 1993.

Evan R. Chesler and Richard W. Clary, Cravath, Swaine & Moore, Howard Weber, Davis, Scott, Weber & Edwards, P.C., New York City, David L. Schiavone, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiff.

Jerold S. Solovy, Donald R. Harris, Barbara S. Steiner, Jenner & Block, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court is Plaintiff's Motion to Strike the Defendant's First Affirmative Defense.

### FACTS

In its Complaint, Plaintiff International Business Machines ("IBM") alleges that Defendant Comdisco, Inc. ("Comdisco") has made certain misrepresentations to its customers concerning modified IBM 3090 memory. According to IBM, Comdisco's misrepresentations include claims that modified IBM 3090 memory is "IBM" memory, which IBM has maintained in the past and which is eligible for continued IBM maintenance service. In the first affirmative defense of its First Amended Answer, Comdisco asserts that IBM's allegations in its complaint are barred by the provisions of the Consent Decree entered in *United States v. International Business Machines Corp.,* 1956 Trade Cas. (CCH) ¶ 68, 245 (S.D.N.Y.1956).

Comdisco argues that through the policies and practices which IBM seeks to enforce in this lawsuit, IBM has attempted to avoid its obligations under the Consent Decree. Specifically, Comdisco cites four sections of the Consent Decree which IBM has violated. (Defendant's First Amended Answer, p. 26–27).

First, Comdisco states that IBM has violated § VII(d)(3) of the Consent Decree which enjoins IBM from "prohibiting or in any way subjecting to IBM control or approval, alterations in or attachments to [IBM] machines." (Consent Decree § VII(d)(3), p. 71,125.)

Second, Comdisco argues that IBM has not fulfilled its obligation under the Consent Decree "to maintain and repair at reasonable and nondiscriminatory prices and terms" IBM manufactured computers and parts for their owners. IBM's duty to maintain and repair alterations exists only if such maintenance and repair is not "impractical for IBM personnel having had standard training and instruction provided by IBM to such maintenance and repair personnel." (Consent Decree § VI(b), p. 71,124.)

Third, Comdisco claims IBM violated its duty under the Consent Decree to sell to owners of IBM manufactured computers and parts and to persons engaged in the business of maintaining and repairing IBM manufactured computers and parts "repair and replacement parts and subassemblies" at "reasonable and nondiscriminatory terms." (Consent Decree § VI(c), p. 71,124.)

Finally, Comdisco asserts that despite the directives of the Consent Decree, IBM has not "made full and fair disclosure" of the "prices and terms" for sale and lease of IBM manufactured computers and parts. (Consent Decree § IV(b) 5.)

ANALYSIS

In its Motion to Strike, IBM does not seek any ruling regarding the proper interpretation of the Consent Decree. (IBM's Memorandum in Support of Its Cross–Motion to Strike Comdisco's First Affirmative Defense at 3.) Rather, IBM argues that the affirmative defense should be stricken as a matter of law because (1) Comdisco, as a non-party to the Consent Decree, cannot seek to enforce the Consent Decree and (2) Comdisco has not alleged a proper equitable estoppel defense based on the Consent Decree.

■ Motions to strike under Rule 12(f) of the Federal Rules of Civil Procedure are generally disfavored because they are often interposed to create a delay. *Van Schouwen v. Connaught Corporation*, 782 F.Supp. 1240, 1245 (N.D.Ill.1991) citing *United States v. 416.81 Acres of Land*, 514 F.2d 627 (7th Cir.1975). According to the court in *Van Schouwen*,

[M]otions to strike can be nothing other than distractions. If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can safely be ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record—such as on a motion for summary judgement. Accordingly, Courts are typically reluctant to decide disputed or substantial issues of law on a motion to strike.

782 F.Supp. at 1245. However, the *Van Schouwen* court also recognized that, "when the insufficiency of a defense is clearly apparent, a motion to strike can help the litigants clear away irrelevant or redundant clutter." *Id.*

■ Affirmative defense are tested under a standard identical to Rule 12(b)(6). *Id.* Thus, a court will strike an affirmative defense as legally insufficient only if it is impossible for the defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint. *Id.* See also, *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992).

In view of the standard and policy considerations set out by the court in *Van Schouwen*, this Court finds that Comdisco's First Affirmative Defense is legally insufficient for two reasons. First, Comdisco may not attempt to enforce a consent decree to which it is not a party. Second, Comdisco cannot meet the requirements of an equitable estoppel defense based on the Consent Decree.

CONSENT DECREE

■ For the purposes of enforcement, the Supreme Court has held that consent decrees must be construed basically as contracts. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Consequently, a non-party to a consent decree may not en-

force the decree by seeking damages for breach of the decree. "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975) citing *United States v. Armour & Co.,* 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *Buckeye Coal & R. Co. v. Hocking Valley R. Co.,* 269 U.S. 42, 46 S.Ct. 61, 70 L.Ed. 155 (1925).

Relying on *Blue Chip Stamps,* the Seventh Circuit, in *Wang v. Gordon,* 715 F.2d 1187, 1190 (7th Cir.1983), rejected a nonparty's attempt to use a violation of the consent decree to support a damage claim against a party to the consent decree. The Seventh Circuit has also rejected a nonparty's attempt to enforce the obligations of a party to a consent decree. See, *Gautreaux v. Pierce,* 707 F.2d 265, 272–73 (7th Cir.1983) (Posner, J., concurring).

■ However, the rule against non-party enforcement of consent decrees does not only apply in cases where the non-party is attempting to use the consent decree offensively in support of a claim for damages or to enforce the obligations under the consent decree. The rule against non-party enforcement also applies in cases, such as this one, where the non-party seeks to enforce the consent decree defensively. See, *May Dep't Stores v. First Hartford Corp.,* 435 F.Supp. 849 (D.Conn.1977).

In *May Dep't Stores,* defendants asserted at least two affirmative defenses to plaintiff's suit for breach of contract. Defendants' first affirmative defense asserted that the contract was illegal because it was premised on plaintiff's alleged violation of a consent order with the Federal Trade Commission. The court granted plaintiff's motion to strike the first affirmative defense under Rule 12(f) stating that a third party lacks standing to enforce a consent decree. *Id.* at 854. The court justified this rule upon the desirability of leaving the choice and power to enforce or modify the decree in the hands of the government. *Id.* The *May* court stated that "the

F.T.C.'s discretionary power would be severely diminished if private litigants were able to compel the enforcement of its orders, and that would be the effect of permitting third parties to raise violations of the orders as a defense to an otherwise valid contract." *Id.*

In their second affirmative defense, the defendants in *May Dep't Stores* sought rescission of the contract on grounds that the plaintiff fraudulently induced the defendants to enter into the contract by failing to disclose the consent decree's terms. The second affirmative defense, unlike the first affirmative defense, does not depend upon third party enforcement of a consent decree. Rather the second affirmative defense depends on the contention that plaintiff's failure to disclose the existence of the consent decree constituted fraud regardless of whether the contract ultimately violated the consent decree. Thus, the court denied the motion to strike stating that it did not want to prematurely assess the legal or factual merits of the second affirmative defense. *Id.* at 855.

Counter to Comdisco's argument, the *May Dep't Stores* court's denial of the motion to strike the second affirmative defense does not support Comdisco's opposition to IBM's Motion to Strike Comdisco's First Affirmative Defense. Rather, Comdisco's first affirmative defense is analogous to the *May Dep't Stores* defendants' first affirmative defense in that both attempt to assert defensively a consent decree to which the defendant was not a party.

■ In addition to *May Dep't Stores,* Comdisco cites *American Securit Co. v. Hamilton Glass Co.,* 254 F.2d 889, 895 (7th Cir.1958) and *American Securit Co. v. Shatterproof Glass Corp.,* 154 F.Supp. 890 (D.Del. 1957), *aff'd,* 268 F.2d 769 (3d Cir.1959), *cert. denied,* 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed.2d 157 (1959). Comdisco argues that these cases support its proposition that a defendant can assert defensively a consent decree to which it was not a party. (Comdisco's Memorandum in Opposition to IBM's Motion to Strike Comdisco's First Affirmative Defense at 2.)

Both of these cases can be distinguished from the present lawsuit. In *American Securit Co. v. Hamilton Glass Co.*, the Seventh Circuit held that the Indiana District Court had *jurisdiction* to construe a consent decree, entered in an Ohio Federal Court. 254 F.2d at 895. The Seventh Circuit did not hold that a consent decree may be used defend against a patent infringement claim.

In *American Securit Co. v. Shatterproof*, the defendants were entitled to assert plaintiff's violation of the consent decree as a defense to plaintiff's patent infringement claim because the defendants were intended beneficiaries of the consent decree. The consent decree specifically provided that if American Securit could not come to an agreement with an applicant as to the royalty to be paid for use of the patent, the applicant could apply to the court which entered the consent decree to fix a reasonable royalty. 268 F.2d at 770. In contrast, IBM's consent decree does not specifically designate any third party beneficiaries.

EQUITABLE ESTOPPEL

■ The legal insufficiency of Comdisco's first affirmative defense depends not only on the rule against non-party enforcement of a consent decree, but also on the fact that Comdisco cannot establish a proper equitable estoppel defense based on the Consent Decree. To establish a proper equitable estoppel defense, Comdisco must show that IBM's alleged violation of the Consent Decree "caused or brought about" Comdisco's alleged trademark infringement and consequently, IBM should lose its right to assert a trademark infringement case against Comdisco. *Allen–Myland v. International Business Machines Corp.*, 746 F.Supp. 520, 540 (E.D.Pa.1990) citing *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 (4th Cir.1969). The equitable estoppel is merely an application of the ancient equitable doctrine of unclean hands. 407 F.2d at 507.

In *Tempo Music, Inc. v. Myers*, the Fourth Circuit held that the plaintiff was estopped from bringing a copyright infringement claim against the defendant. The defendant argued that the plaintiff had violated its obligations under a consent decree which required the plaintiff to publish a list of its copyrighted songs. The court allowed the defendant to assert the defense of equitable estoppel because the plaintiff's failure to respond to the defendant's request for a list of plaintiff's copyrighted songs had caused or brought about defendant's copyright infringement. 407 F.2d at 507.

Distinguishing *Tempo Music, Inc. v. Myers*, the Southern District of New York held in *Broadcast Music, Inc. v. CBS, Inc.*, 221 U.S.P.Q. 246, 254, 1983 WL 1136 (S.D.N.Y.1983) that CBS could not assert that BMI's copyright infringement was equitably estopped as a violation of the consent decree because CBS could not establish that BMI caused the infringement by CBS. The *Broadcast Music* Court stated,

The parties to this action, equally powerful and resourceful entities, have foundered in their attempts to negotiate a mutually satisfactory licensing agreement. Unlike *Tempo*, this cannot fairly be characterized as a situation in which BMI seeks to recover for an infringement it "caused and brought about." Rather, both parties have assumed adamant legal positions and have acted in accordance with their perceived rights. The direct causal link between plaintiff's allegedly improper conduct and the relief it seeks, characteristic of the unclean hands case, is absent here.

221 U.S.P.Q. at 255.

■ Analogous to *Broadcast Music*, this Court finds that IBM's alleged violation of its consent decree with the United States did not "cause or bring about" Comdisco's alleged trademark infringement. Comdisco does not assert that its alleged misrepresentations made to customers regarding modified IBM cards were a direct result of IBM's violation of the Consent Decree. Rather, Comdisco argues that it is entitled to prove that the alleged misrepresentations are true because, under the language of the Consent Decree, the modified memory cards are "IBM" cards and are eligible for IBM maintenance. (Comdisco's Memorandum in Opposition to IBM's Motion to Strike Comdisco's First Affirmative Defense at 3.) Absent an argument that IBM's alleged violation of the Consent Decree has caused Comdisco's alleged trademark infringement, the defense of equitable estoppel cannot lie.

■ The fact that this court has held that Comdisco, as a non-party to the Consent Decree cannot assert IBM's alleged violation of the Consent Decree as an affirmative defense does not mean that Comdisco may not in the future offer evidence concerning the Consent Decree for other purposes.

For the foregoing reasons, the Plaintiff's Motion to Strike the Defendant's First Affirmative Defense is granted.